The STATE of Ohio, Appellee,

v.

HARRISON, Appellant.

[Cite as *State v. Harrison*, 161 Ohio App.3d 573, 2005-Ohio-2983.]

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 2004CA00098.

Decided June 13, 2005.

Jonathan C. Diernbch, Assistant Law Director, for appellee.

Andrew T. Sanderson, for appellant.

---

Boggins, Judge.

{¶ 1} This is an appeal from appellant James Harrison's conviction on one count of operating a vehicle while impaired and one count of failure to wear a safety restraint.

{¶ 2} Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶ 3} The undisputed facts are as follows:

{¶ 4} On March 12, 2004, Trooper Ryan Dean stopped appellant after observing him twice go left of center: once as he was traveling toward the trooper,

causing the trooper to pull to the right to avoid a collision, and again after the trooper began following appellant.

{¶ 5} Upon approaching appellant's vehicle, Trooper Dean noticed a strong odor of alcohol and that appellant's speech was slurred and his eyes were red and glassy. Based on these observations, Trooper Dean requested that appellant perform field sobriety tests. Trooper Dean testified that appellant failed these tests. Appellant was then placed under arrest and asked to submit a breath sample. Appellant refused to submit to a chemical breath test.

{¶ 6} Trooper Dean further stated that when he approached appellant's vehicle, appellant was not wearing his seat belt, but the trooper did not know whether he had been wearing the seat belt prior to the stop.

{¶ 7} Trooper Dean's cruiser was equipped with a video camera, and he testified that it is the policy of the State Highway Patrol to record all stops. However, according to Trooper Dean, the tape in his camera ran out before he stopped appellant, so the stop was not recorded. The tape was later erased by someone at the Highway Patrol Post.

{¶ 8} Appellant was charged with one count of driving left of center, one count of operating a vehicle while impaired, and one count of failure to wear a safety restraint.

{¶ 9} On March 15, 2004, appellant was arraigned and entered pleas of not guilty to each of the charges contained in the complaint.

{¶ 10} On March 19, 2004, appellant filed a request for discovery, including any videotapes related to this matter. Discovery was provided; however, no video-tapes were included.

{¶ 11} On July 22, 2004, appellant filed a motion to dismiss, claiming that evidence related to this case had been destroyed by agents of the state, thereby denying him due process of law.

{¶ 12} A hearing was held on appellant's motion, and by judgment entry dated September 21, 2004, the trial court denied the motion.

{¶ 13} On October 21, 2004, the matter proceeded to trial. At the conclusion of trial, the trial court found appellant guilty of the charges as contained in the complaint and sentenced appellant to 180 days in jail with 165 days suspended and a two-year license suspension and ordered appellant to pay a $400 fine on the OMVI charge, $50 plus costs on the left-of-center charge, and $30 plus costs on the seat-belt charge.

{¶ 14} It is from this conviction and sentence that appellant now appeals, assigning the following errors for review:

## ASSIGNMENTS OF ERROR

{¶ 15} "I. The trial court committed harmful error in refusing to dismiss the complaint against the defendant-appellant thus denying the defendant-appellant due process of law.

{¶ 16} "II. The trial court committed harmful error in finding the defendant-appellant guilty of operating a vehicle while not wearing a seatbelt as the conviction of the defendant-appellant is not supported by credible evidence sufficient to sustain or warrant same."

I

{¶ 17} In his first assignment of error, appellant contends that the trial court erred in denying his motion to dismiss. We disagree.

{¶ 18} Appellant argues that the videotape in the instant case was destroyed and that the destruction of evidence required the dismissal of the charges against him because he was denied his due-process rights.

{¶ 19} In *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by a state's failure to preserve evidence. The court stated the following:

{¶ 20} "The Due Process Clause of the Fourteenth Amendment, as interpreted in [*Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281.

{¶ 21} Thus, the *Youngblood* court established two tests: one that applies when the evidence is "materially exculpatory" and one that applies when the evidence is "potentially useful." If the state fails to preserve evidence that is

materially exculpatory, the defendant's rights have been violated. However, evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. Stated in other words, "To be materially exculpatory, 'evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *State v. Colby*, Portage App. No. 2002–P–0061, 2004-Ohio-343, 2004 WL 145339, ¶ 11, quoting *California v. Trombetta* (1984), 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413. This court has consistently held that the burden of proof is on the defendant to show the exculpatory nature of the destroyed evidence. See *State v. Birkhold* (Apr. 22, 2002), Licking App. No. 01CA104, 2002 WL 727154; *State v. Hill* (Mar. 8, 1999), Stark App. No. 1998CA0083, 1999 WL 174921; *State v. Blackshear* (June 19, 1989), Stark App. No. CA–7638, 1989 WL 66650.

{¶ 22} If, on the other hand, the state fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith. The term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *State v. Franklin*, Montgomery App. No. 19041, 2002-Ohio-2370, 2002 WL 1000415, ¶ 47.

{¶ 23} Upon full review of the record, we are unpersuaded that this case falls under a category of bad-faith destruction of evidence "in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333, 102 L.Ed.2d 281. We therefore hold that the trial court did not err in failing to dismiss the charges against appellant on the basis that the erasure of the traffic-stop tape violated due process. *State v. Canter*, Fairfield App. No. 01 CA 51, 2002-Ohio-3473, 2002 WL 1445358.

{¶ 24} Trooper Dean testified that while there was a video camera in the cruiser he drove that night, the tape ran out prior to his stopping appellant. Therefore, the videotape, which was later erased, did not contain any evidence, exculpatory or inculpatory.

{¶ 25} Based upon a review of the record, we cannot conclude that the evidence was shown to be materially exculpatory or even merely potentially helpful to the

defense. Furthermore, this court determines that there was no showing of bad faith in failing to preserve the videotape.

{¶ 26} Because appellant did not make a showing of bad faith, appellant's assignment of error must fail. Accordingly, appellant's first assignment of error is overruled.

## II

{¶ 27} In his second assignment of error appellant argues that the court's finding that he was not wearing a seat belt was not supported by sufficient evidence. We agree.

{¶ 28} Appellant was charged with violating R.C. 4513.263, which states:

{¶ 29} "(B) No person shall do any of the following:

{¶ 30} "(1) Operate an automobile on any street or highway unless that person is wearing all of the available elements of a properly adjusted occupant restraining device, or operate a school bus that has an occupant restraining device installed for use in its operator's seat unless that person is wearing all of the available elements of the device, as properly adjusted."

{¶ 31} When an appellate court reviews a record upon a sufficiency challenge, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 32} The only evidence presented at trial as to the seat-belt violation was Trooper Dean's testimony:

{¶ 33} "Q: Okay. You say you charged him with safety belt * * *. [W]hat was the basis for that charge?

{¶ 34} "A: He didn't have his belt on when I walked up to the car.

{¶ 35} "Q: Okay. And were you able to observe whether he had that belt on before he stopped?

{¶ 36} "A: After I get behind him and with the spotlight you can see if it's across his shoulder and … uh .. but it was night I couldn't have saw it before I got right behind him no.

{¶ 37} "* * *

{¶ 38} "Q: Let's start with the seat belt officer, you said you could or could not see it prior to approaching the vehicle?

{¶ 39} "A: It's night you can't see it until after you get them stopped and put the spotlight in the back.

{¶ 40} "Q: So when . . .

{¶ 41} "A: So I didn't see it going across his shoulders, it was a pickup truck extended cab.

{¶ 42} "Q: So when you pulled him over shined the light in the back, could you or could you not tell it was across his shoulder?

{¶ 43} "A: I did not see it across his shoulder when I walked up.

{¶ 44} "Q: Are the rear windows in that truck tinted?

{¶ 45} "A: Uh . . . that's a good point, I can't . . . can't recall."

{¶ 46} When applying the above standard to the facts, and after viewing the evidence in a light most favorable to the prosecution, we do not find that any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. We therefore find that there was insufficient evidence to support the trial court's judgment.

{¶ 47} Based on the foregoing, we find that the trial court did err in finding appellant guilty of failing to wear a seat belt.

{¶ 48} Appellant's second assignment of error is sustained.

{¶ 49} The decision of the Licking County Court of Common Pleas is affirmed in part and reversed in part.

Judgment affirmed in part<br>and reversed in part.

HOFFMAN and FARMER, JJ., concur.