OPINION
{¶ 1} Defendant-appellant, Patrick Powers, appeals the decision of the Clermont County Court of Common Pleas denying his motion to dismiss driving while under the influence of alcohol ("DUI") charges. We affirm.
 {¶ 2} On October 18, 2003, appellant received a call from his brother, Michael Powers, requesting that appellant pick him up from a nearby bar because Michael was too intoxicated to drive himself. Appellant, having retrieved his brother from Pete's Cafe, was traveling on State Route 28 in Clermont County, Ohio when Ohio State Highway Patrolman Brian Welling noticed appellant's vehicle because it did not have an illuminated rear license plate. The state trooper followed appellant and observed his vehicle drift across the right edge line and change lanes twice without properly signaling. The officer activated his overhead lights and stopped appellant.
 {¶ 3} Trooper Welling approached the vehicle and asked appellant for identification. Appellant produced a driver's license that indicated, because of prior DUI convictions, he was required to drive with an interlock device, an ignition device meant to mechanically inhibit the operation of a motor vehicle by a driver who has been drinking alcoholic beverages. Appellant's particular model requires a breath sample registering a breath-alcohol content of the operator to be below .025. A data recorder within the machine keeps track of whether the driver fails a breath-test as well as if the unit has been disconnected and restarted.
 {¶ 4} Appellant was asked to exit the car. The officer detected a strong odor of alcohol coming from appellant's breath and person. Upon noticing what appeared to be a disconnected interlock, the officer questioned appellant as to whether the device was functional. He received no intelligible answer or explanation. Appellant claimed that he had "one beer," but Trooper Welling observed numerous indicators of intoxication including slow and slurred speech, glazed eyes, and failed field sobriety tests.
 {¶ 5} Appellant was placed under arrest for DUI. Trooper Welling made arrangements for the car to be towed. He conducted an inventory of the vehicle, including on his report "`GUARDIAN' INTERLOCK — UNPLUGGED."[1]
The item in question was a small, black box labeled "Guardian." Trooper Welling testified that "[the box] was lying kind of near the center floor board, just lying on the floor board. Had a cord attached to it that was not plugged in." Keith Federle, owner of Mindum's Towing, arrived at the scene to tow and hold the vehicle at his lot. Federle, familiar with the interlock device, noticed appellant's interlock was not connected to a breathing apparatus that would normally be used to register the operator's breath sample.
 {¶ 6} On November 6, 2003, the court ordered the immobilization of the vehicle. In preparation of a visit from the court bailiff to immobilize appellant's car, Federle moved the vehicle. To the best of Federle's recollection, he did not see the interlock device in the car despite the fact that no one had been in the vehicle since it was originally impounded on October 18. A bailiff came later that afternoon and installed a "club" device pursuant to the court's order. On November 10, 2004, appellant visited the lot in order to retrieve some personal items from the car including the Guardian interlock at which point he discovered the interlock device was missing. Appellant made inquiries at the bailiff's office to locate the device. A police report was not filed and the device's whereabouts remain unknown.
 {¶ 7} Appellant was indicted on November 19, 2003 for driving under the influence of alcohol or drugs pursuant to R.C. 4511.19(A)(1). Appellant's charge was classified as a fourth-degree felony because appellant had been previously convicted or pleaded guilty to three DUI offenses within six years of the present offense. R.C. 4511.19(G)(1)(d). On December 23, 2003, appellant filed a request for discovery, but there was no specific mention of the Guardian interlock or the data that such device records. On February 18, 2004, appellant moved for discovery requesting "[a]ny readings, or analyses or reports of the Guardian Interlock on Defendant's car at the time of his arrest." Appellant's discovery motion was accompanied on the same day by a motion to dismiss wherein he alleged that he was entitled to dismissal because the state violated his due process rights by failing to preserve evidence, specifically the information from the interlock. However, appellant never moved to preserve the evidence.
 {¶ 8} The court denied appellant's motion to dismiss finding that the information was not materially exculpatory, or in the alternative, if potentially useful, that the state did not act in bad faith by not preserving the evidence. Appellant pleaded no contest to the DUI charge and was sentenced to three years of community control subject to the general supervision and control of the Adult Probation Department. Appellant now appeals the trial court's decision to deny his motion to dismiss raising one assignment of error.
 {¶ 9} Appellant argues that the DUI charge should have been dismissed because the state failed to preserve materially exculpatory evidence. We disagree.
 {¶ 10} Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a criminal defendant is guaranteed access to evidence. The state's failure to preserve "materially exculpatory" evidence, regardless of whether such failure was done in good faith or bad faith, violates due process. Arizona v. Youngblood (1988), 488 U.S. 51,57-58, 109 S.Ct. 333. See, also, Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194. Materially exculpatory evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v.Trombetta (1984), 467 U.S. 479, 489, 104 S.Ct. 2528; State v. Benton
(2000), 136 Ohio App.3d 801, 805.
 {¶ 11} Despite appellant's assertions to the contrary, we find that the information from the interlock's data recorder was not materially exculpatory because the exculpatory value of the evidence was not apparent. Trooper Welling, immediately alerted to appellant's interlock status, observed the disconnected device in the vehicle. Appellant was unresponsive to the officer's questions regarding the interlock's operability and he did not offer any explanation as to why it appeared to be in its disconnected state. Additionally, both Trooper Welling and Federle testified that no breathing tube was attached to the machine.
 {¶ 12} At the motion to dismiss hearing, appellant testified that he had disconnected the interlock in late September or early October because he was having difficulty starting his car. He called the Guardian interlock company and was given instructions on how to detach the device from the car's wiring. Appellant claimed that he discovered his car battery and the wires surrounding it were severely corroded. Although appellant and his brother testified that appellant submitted a breath-sample in order to start the car that evening, there was no testimony by appellant stating that he ever reconnected the interlock in the intervening fortnight between its removal and the night of his arrest. In fact, Federle testified that as he prepared the car for immobilization, he "[g]ot in [the car], started it up, and moved it." He did not have to submit a breath sample to start it.
 {¶ 13} In State v. Harrison, 161 Ohio App.3d 573, 2005-Ohio-2983, the Fifth District recently addressed a similar situation where a defendant charged with driving while impaired alleged the improper destruction of evidence when a police cruiser videotape was erased. Although State Highway Patrol policy was to record all stops, the state trooper testified that the tape in his camera ran out before Harrison was stopped, so nothing was recorded. The court found that the videotape was not shown to be materially exculpatory because the erased tape did not contain any evidence, exculpatory or inculpatory. Id. at ¶ 24-25.
 {¶ 14} In the case at bar, the disconnected interlock data recorder did not contain any evidence regarding appellant's breath-alcohol content on the night in question. At best, it would provide information about when the device was last connected, thus falling well short of the apparent exculpatory value standard. We find the failure to preserve the evidence was not violative of appellant's due process rights.
 {¶ 15} Appellant argues that the state did not meet the burden of demonstrating the inculpatory value of the evidence, citing Benton andState v. Benson, 152 Ohio App.3d 495, 2003-Ohio-1944, for this proposition. Appellant's citation of both Benton and Benson is misplaced. It is well established that the burden of proof is on the defendant to show the exculpatory nature of destroyed evidence. See Harrison at ¶ 21. While Benton and Benson involved the destruction of evidence, namely videotapes of defendants' DUI arrests, the burden to demonstrate the evidence's inculpatory value shifted to the state when such destruction occurred after the defendants filed specific motions to preserve the evidence. In the case at bar, appellant never moved the trial court to preserve the evidence. His initial discovery request came over 40 days after he knew the device was missing. Appellant's specific discovery request for the interlock information was made on the same day as his motion to dismiss. The burden to prove that the evidence was materially exculpatory rested on appellant. Because he failed to demonstrate this, the trial court did not err when it denied his motion to dismiss.
 {¶ 16} With respect to the preservation of "potentially useful" evidence, the failure to preserve such will only be considered a denial of due process of law if "a criminal defendant can show bad faith on the part of the [state]." Arizona v. Youngblood, 488 U.S. at 58. Bad faith implies more than bad judgment or negligence, rather "[i]t imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Benson, at ¶ 14, citing State v. Buhrman (Sept. 12, 1997), Greene App. No. 96 CA 145. In the case at bar, appellant did not assert that the state acted in bad faith with respect to its failure to preserve potentially useful evidence. Appellant's due process rights were not violated when the state failed to preserve the information from the interlock's data recorder. The trial court did not err when it denied appellant's motion to dismiss. Appellant's assignment of error is overruled.
 {¶ 17} Judgment affirmed.
Young and Bressler, JJ., concur.
[1] Guardian Interlock was the specific manufacturer and installer of appellant's interlock system.