DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Brian C. Gregg, appeals the judgment of the Norwalk Municipal Court, which convicted him of driving under the influence of alcohol, a violation of R.C. 4511.19(A)(1)(a), and driving under an OVI suspension, a violation of R.C. 4510.14. For driving under the influence, he was sentenced to 30 days incarceration, an $800 fine and *Page 2 
a one year license suspension. For driving under suspension, he was sentenced to 30 days incarceration with 27 days incarceration suspended, a fine of $250, and two years probation. From that judgment of conviction, appellant raises one assignment of error for review:
 {¶ 2} "The trial court erred to the prejudice of the Defendant-Appellant in denying his motion to suppress evidence obtained through a warrantless, unreasonable seizure, in violation of his rights under the U.S. and Ohio Constitution."
 {¶ 3} The following facts were taken from the hearing on appellant's motion to suppress. At 3:15 in the morning, on the evening of March 11, 2006, Rudolph Wilson, a police officer with the village of New London, was on patrol in a marked police car. When he stopped at the intersection of Newkirk and Walnut Streets, he saw, stopped perpendicularly at the intersection, a light blue Lincoln with no front license plates. The vehicle passed through the intersection in front of Wilson; Wilson followed and stopped the car after about 100 feet. The vehicle, which did not commit any traffic violation and was not being operated erratically, stopped immediately.
 {¶ 4} Wilson walked to the driver's side window and informed the driver, appellant, that he was stopped for lack of license plates. Wilson testified that appellant's eyes were "red and glassy." He "observed a smell of intoxicating beverage" in the car; he could not definitively tell whether the smell was emanating from appellant directly or from elsewhere inside the car. Wilson described the smell as "mild, moderate." Appellant informed Wilson that temporary tags rested on the "back dash" of the car, *Page 3 
underneath the rear window. Appellant's speech was not slurred or otherwise impaired. Neither appellant nor the female passenger in the front passenger seat were wearing seatbelts.
 {¶ 5} Because Wilson intended to issue citations for the seatbelt violations, he asked appellant for his driver's license. Appellant was unable to produce one, so Wilson requested his identifying information. Although Wilson saw appellant's bloodshot eyes and smelled an odor of alcohol inside the vehicle, he admitted that, at that moment, he did not immediately investigate further because he "wanted to know who [he] had." Wilson returned to his car and used his vehicle's computer to ascertain appellant's license status; he learned that appellant's license was suspended for a prior OVI violation. He returned to appellant's car, where the female passenger informed Wilson that appellant had been drinking. Wilson asked appellant whether he had had any alcoholic beverages to drink, and appellant admitted to having drank a "few" beers.
 {¶ 6} At that point, Wilson asked appellant to exit the vehicle and he conducted a portable breathalyzer test, a horizontal gaze nystagmus ("HGN") test, the one-legged stand test, a counting test, and an alphabet test. Appellant registered four out of a possible six clues for intoxication on the HGN; four out of a possible four clues on the one-legged stand test; and he passed the counting test but failed the alphabet test. Appellant's breath sample registered at .101 percent. Wilson then arrested appellant; appellant refused to take a second alcohol blood-level test at the police station. *Page 4 
 {¶ 7} The trial court denied appellant's motion to suppress on the grounds that Officer Wilson had "reasonable cause" to stop appellant's vehicle and probable cause to arrest for driving while intoxicated. Appellant thereafter changed his plea to no contest, upon which the trial court entered a judgment of conviction.
 {¶ 8} Appellate review of a trial court decision on a motion to suppress evidence presents a mixed question of law and fact. State v.McNamara (1997), 124 Ohio App.3d 706, 710. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." State v. Burnside (2003),100 Ohio St.3d 152, 154-155. Determinations of a witness's credibility is a function of the trier of fact that is given substantial deference on review.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The appellate court must accept the trial court's findings of fact provided that they are supported by competent, credible evidence.State v. Durnwald (2005), 163 Ohio App.3d 361, 369, citingBurnside, supra. Next, the appellate court, conducting a de novo review, determines independently whether the facts in the case satisfy the applicable legal standard. State v. Claytor (1993), 85 Ohio App.3d 623,627; State v. Guysinger (1993), 86 Ohio App.3d 592, 594.
 {¶ 9} Section 14, Article I of the Ohio Constitution affords the same protection as the Fourth Amendment to the United States Constitution.State v. Robinette (1997), 80 Ohio St.3d 234, 239. A traffic stop based on probable cause that a traffic violation occurred passesFourth Amendment muster. Dayton v. Erickson (1996), 76 Ohio St.3d 3, *Page 5 
syllabus. Appellant concedes that the initial stop of his vehicle was proper, as it was based on Wilson's probable cause to believe that appellant's vehicle was unregistered. Appellant challenges the extension of the initial stop, arguing that probable cause to prolong the stop dissipated when Wilson learned that the vehicle had temporary tags.
 {¶ 10} The facts of this case are closely analogous to State v.Chatton (1984), 11 Ohio St.3d 59.[1] There, an officer stopped the defendant's car for failure to display a license plate. As the officer approached the car, he noticed a temporary tag in the back window. Regardless, the officer went to the driver's side window and requested the defendant's driver's license. The Ohio Supreme Court held that once the officer realized that the defendant's car had a temporary tag, the officer could not have asked for the defendant's driver's license. "[W]here a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable." Id. at 63.
 {¶ 11} However, the police officer could still have approached the driver: "[A]s a matter of courtesy, [the officer] could have explained to appellee the reason he was initially detained, the police officer could not unite the search to this detention, and appellee should have been free to continue on his way without having to produce his *Page 6 
driver's license." Id. Thus, if, at the time of approaching appellant, Wilson perceived fresh indicia forming a reasonable suspicion that appellant was engaged in criminal activity, extending the detention was reasonable. "[W]hen an officer's objective reasons for prolonging detention in a traffic stop are unrelated to the purpose of the initial stop, the continued detention must be predicated on `articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention.'" State v. Mapes, 6th Dist. No. F-04-031,2005-Ohio-3359, at ¶ 40, citing State v. McMillin, 6th Dist. No. H-04-018, 2005-Ohio-2096, at ¶ 23, citing State v. Robinette (1997),80 Ohio St.3d 234, paragraph one of the syllabus.
 {¶ 12} Appellant argues that it was unjustifiable to continue the traffic stop for the sole purpose of citing a motorist for a seat belt violation when the original basis for the stop (failure to display license plate) is extinguished, citing R.C. 4513.263, the mandatory seat belt law. That statute provides in relevant part:
 {¶ 13} "(D) Notwithstanding any provision of law to the contrary, no law enforcement officer shall cause an operator of an automobile being operated on any street or highway to stop the automobile for the sole purpose of determining whether a violation of division (B) of this section has been or is being committed or for the sole purpose of issuing a ticket, citation, or summons for a violation of that nature or causing the arrest of or commencing a prosecution of a person for a violation of that nature, and no law enforcement officer shall view the interior or visually inspect any automobile being *Page 7 
operated on any street or highway for the sole purpose of determining whether a violation of that nature has been or is being committed."
 {¶ 14} The statute thus prohibits law enforcement officers from stopping a vehicle for "the sole purpose" of determining whether a driver or occupant is not wearing a seat belt or for the "sole purpose" of issuing a citation for not wearing a seat belt. Appellant also correctly notes that a motorist cannot be convicted of failing to wear a seat belt unless the officer observes the motorist not wearing the seat belt while the car is in motion and before the stop. State v.Harrison, 161 Ohio App.3d 573, 2005-Ohio-2983; Newburgh Heights v.Halahsah (1999), 133 Ohio App.3d 640.
 {¶ 15} Wilson stopped appellant for suspicion of failure to properly display license plates. He discovered that appellant was not wearing a seat belt coincident with his discovery that appellant's vehicle had temporary license plates. Wilson testified that he was unable to see whether appellant was not wearing a seat belt while the vehicle was in motion prior to the stop. Appellant could not, therefore, have been convicted of failure to wear a seat belt. Indeed, although Wilson charged him with the violation, no conviction for the offense appears in the judgment entries.
 {¶ 16} Appellant extends this premise to argue that if Wilson could not properly cite him for the seat belt violation, he improperly requested his license for the purpose of issuing the citation. However, it was shortly before and while gathering information in order to issue a citation for the seat belt violation that Wilson perceived indicia which aroused his suspicion that appellant was intoxicated. Specifically, he described *Page 8 
appellant's eyes as "red, glassy," and he smelled a "mild" to "moderate" odor of alcohol emanating from inside the vehicle. Wilson admitted that the smell was not strong and that he could not determine whether the smell was coming from the passenger, the vehicle, or appellant. Appellant's speech was not slurred or otherwise impaired. Wilson acknowledged that appellant's driving was not impaired and he saw no other violations, aside from the lack of a license plate, before he stopped appellant.
 {¶ 17} While these facts present a close question, the issue is not unprecedented. In State v. Lavalette, 6th Dist. No. WD-02-025, 2003-Ohio-1997, an officer stopped a vehicle for improper plates but, after the stop and upon investigation, discovered he was mistaken. The officer nevertheless approached the driver of the vehicle to speak with him. Upon speaking with the driver, the officer smelled an alcoholic beverage and began an investigation for driving while under the influence. We held, applying Chatton, that "once the officer smelled the alcoholic beverage, he did, in fact, have new and independent articulable suspicion that appellant was engaging in criminal behavior (DUI), and he was entitled to investigate for that." Id. at ¶ 19.
 {¶ 18} Concomitantly, appellant argues that Wilson lacked probable cause to detain him for driving under the influence, claiming that Wilson observed insufficient indicia to justify an investigatory seizure. He argues that most drivers would have reddened eyes at three o'clock in the morning and that the smell of alcohol was neither strong nor directly emanating from his person. Essentially, he argues that if these two factors are sufficient for roadside sobriety testing, "anyone who makes the mistake of *Page 9 
drinking anywhere but at home, without a designated driver, should expect to be ordered out of his or her car and made to perform tricks by the side of the road like a dancing bear."
 {¶ 19} Wilson, although his stated intention in requesting appellant's driver's license was to issue (improperly) a seat belt violation, did have facts within his knowledge to create reasonable suspicion that appellant was driving under the influence of alcohol. These facts, as is so often the case, present a close issue. "Where a non-investigatory stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists. State v.Wells, 2d Dist. No. 20798, 2005-Ohio-5008; State v. Cooper, 2d Dist. No. 2001-CA-86, 2002-Ohio-2778; State v. Robinson, 2d Dist. No. 2001-CA-118, 2002-Ohio-2933; State v. Mapes, 6th Dist. No. F-04-031,2005-Ohio-3359 (odor of alcohol, `slurred speech' and glassy and bloodshot eyes); Village of Kirtland Hills v. Strogin, 11th Dist. No. 2005-L-073, 2006-Ohio-1450." State v. Beeley, 6th Dist. No. L-05-1386, 2006-Ohio-4799, ¶ 16.
 {¶ 20} Further, the extent of the detention at this point — asking for appellant's identification — was minimally intrusive — less intrusive than requesting field sobriety testing. Requesting field sobriety tests is not overly intrusive if the officer possesses a reasonable articulable suspicion that the driver is illegally intoxicated.State v. Sanders (1998), 130 Ohio App.3d 789, 794. As soon as Wilson checked appellant's identifying information, the revelation that appellant was under a license suspension created fresh *Page 10 
probable cause. Appellant then admitted, after Wilson discovered appellant's license was suspended, that he had been drinking earlier in the evening. An admission by a driver that he has consumed alcoholic beverages may contribute to reasonable suspicion and, moreover, probable cause. State v. Droste (1998), 83 Ohio St.3d 36, 40.
 {¶ 21} For all of the foregoing reasons, appellant's first assignment of error is found not well-taken, and the judgment of the Norwalk Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski P.J., William J. Skow, J., CONCUR.
[1] Although the statute governing how temporary tags must be displayed, R.C. 4503.21, was subsequently amended, the Fourth Amendment principles of Chatton remain valid. *Page 1