[Cite as *State v. Hayes*, 2023-Ohio-3319.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-220529 |
| | | C-220530 |
| Plaintiff-Appellee, | : | TRIAL NOS. 21CRB-21996 |
| | | 21TRC-27922 B, C, D |
| | : | |
| vs. | | |
| | : | *O P I N I O N.* |
| DARYLE HAYES, | : | |
| Defendant-Appellant. | : | |


Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in Part, and Reversed and Appellant Discharged in Part

Date of Judgment Entry on Appeal: September 20, 2023


*Emily Smart Woerner,* City Solicitor, *William T. Horsley,* Chief Prosecuting Attorney, and *Ashton Tucker,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *David Hoffmann,* Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1} Defendant-appellant Daryle Hayes appeals the judgments of the Hamilton County Municipal Court convicting him of several traffic offenses, including possession of an open container, improper passing, driving without a seat belt, and a traffic light violation. On appeal, he argues that these convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. For the reasons that follow, we reverse Hayes's convictions for improper passing and driving without a seat belt, but we affirm the court's judgments in all other respects.

## I. Factual and Procedural Background

{¶2} Following a traffic stop on December 9, 2021, Hayes was charged with operating a vehicle while under the influence of alcohol ("OVI") under R.C. 4511.19(A)(1)(a), weaving under Cincinnati Municipal Code 506-76, driving without a seat belt under R.C. 4513.263, a traffic light violation under Cincinnati Municipal Code 506-40, and possession of an open container under R.C. 4301.62.

{¶3} A jury trial commenced in July 2022 on the OVI charge, and the other traffic charges were tried to the bench. At trial, the city presented testimony from Cincinnati Police Officer Olivia Zick that she and fellow Cincinnati Police Officer Samuel Bailey were working an off-duty detail in a marked police vehicle when they saw Hayes, who was driving a Ford F150 truck, run through a red light at the intersection of Martin Luther King Drive ("MLK") and Dixmyth Avenue. According to Officer Zick, the light had just switched over and was "solid red" when Hayes entered the intersection. Officer Bailey likewise testified that he witnessed Hayes run the red light, stating that the light "was on solid red for quite a bit before he drove through it."

{¶4} The officers followed Hayes as he drove westbound on MLK, and Officer Zick stated that he was "weaving in and out of the marked lines trying to go around cars." He did so more than once, but less than five times. Officer Bailey testified similarly, stating that Hayes "weaved in and out of lanes without using turn signals and went around a vehicle as well."

{¶5} The officers stopped Hayes once he turned from MLK onto Central Parkway. According to Officer Zick, they waited to pull Hayes over until he reached a safe place for them to do so, and she did not witness him commit any traffic infractions when turning onto Central Parkway or while being pulled officer. Officer Zick approached Hayes's vehicle on the passenger side. Upon opening the door, she noticed a strong odor of an alcoholic beverage, that Hayes's eyes were bloodshot, and that his speech was slurred. Officer Zick testified that Hayes was not wearing a seat belt when he was pulled over. Suspecting that Hayes was intoxicated, Officer Zick asked him to exit from the vehicle. After a brief struggle, Hayes got out of the car and was handcuffed. According to Officer Zick, Hayes was not offered field-sobriety tests because he was being combative and the tests presented a safety issue, as the officers did not want to remove his handcuffs after struggling to cuff him in the first instance. After Hayes was placed in the squad car, his vehicle was searched.

{¶6} Officer Bailey testified that he found a half-empty, 375 milliliter bottle of Lawrence Diluted Vodka, two empty vodka bottles of a similar size, and two empty bottles of wine behind the driver's seat in a black plastic bag, along with an empty bottle of juice, a cigar wrapper, and other trash. According to Officer Bailey, the half-empty bottle contained "a clear liquid that would be consistent with vodka." He additionally stated that "As I was searching the truck, you can just smell the strong

odor of alcohol coming from the vehicle itself," although he conceded that he was unaware if any of the bottles of alcohol had leaked or spilled in the vehicle. Officer Bailey did not testify that he smelled the liquid in the bottle or that a lab test determined that it was alcohol, and on cross-examination he agreed that the liquid inside the bottle was also consistent with water.

{¶7} After waiting approximately 45 minutes for a tow truck to arrive, Hayes was transported to the police station. Cincinnati Police Officer Kevin Tommer testified that, once at the station, Hayes was offered, and refused to take, a breath test.

{¶8} Hayes testified that he suffers from bipolar disorder, depression, paranoia, posttraumatic stress disorder, insomnia, and anxiety, and that he manages these disorders with medication that prevents him from drinking alcohol. Hayes denied drinking alcohol prior to the traffic stop and stated that he had last drunk alcohol several weeks before this incident. He testified that his jaw bone had been previously shattered, that he was missing six teeth, and that his reconstructed jaw interferes with his mouth function. His counsel argued during closing argument that these issues were the reason for his slurred speech.

{¶9} Hayes explained that he earns money doing waste removal, recycling bottles, and moving large items for people and businesses. He asserted that when he was pulled over, he was on his way home after cleaning up the parking lots of two businesses in Avondale, and that the bottles found in his truck were left over from a prior clean-up job. Hayes testified that the odor of an alcoholic beverage came from the nature of his work, explaining that "I'm always stinking. That's what comes with the trash." With respect to the traffic violations that he was charged with, Hayes denied running a red light or swerving in traffic. He further insisted that he had been wearing

his seat belt while driving, explaining that he had taken off the seat belt to remove his wallet from his pocket.

**{¶10}** The jury found Hayes not guilty of OVI. For its part, the trial court found Hayes guilty of driving without a seat belt, the traffic light violation, possession of an open container, and improper passing under Cincinnati Municipal Code 506-70.[1] Hayes now appeals.

## II. Law and Analysis

**{¶11}** In a single assignment of error, Hayes argues that his convictions were based on insufficient evidence and were against the manifest weight of the evidence.

**{¶12}** When reviewing the sufficiency of the evidence, an appellate court asks whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *State v. Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, ¶ 16. In doing so, the court "asks whether the evidence against a defendant, *if believed*, supports the conviction." (Emphasis sic.) *Id.*

**{¶13}** A manifest-weight-of-the-evidence argument, on the other hand, "challenges the believability of the evidence." *State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271, and C-200272, 2021-Ohio-3086, ¶ 10. When undertaking such review, we sit as a "thirteenth juror." *State v. Green*, 1st Dist. Hamilton No. C-190280, 2020-Ohio-4370, ¶ 9, citing *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

---

[1] Although Hayes was ticketed for weaving under Cincinnati Municipal Code 506-76, he was convicted of improper passing under Cincinnati Municipal Code 506-70.

### A. Possession of an Open Container

**{¶14}** Hayes was found guilty of possession of an open container under R.C. 4301.62. He contends that his conviction was not supported by sufficient evidence because the city presented no evidence, other than the label on the half-full bottle found in his truck, that the liquid inside the bottle was vodka. He argues that additional evidence was necessary to establish that the liquid was alcohol, such as a lab test or testimony about the smell of the liquid. The city contends that testimony about the smell of alcohol in the vehicle itself, along with testimony that the liquid inside the bottle was consistent with vodka, was sufficient.

**{¶15}** R.C. 4301.62 provides in relevant part that:

No person shall have in the person's possession an opened container of beer or intoxicating liquor in any of the following circumstances:

\* \* \*

(4) Except as provided in division (D) or (E) of this section, while operating or being a passenger in or on a motor vehicle on any street, highway, or other public or private property open to the public for purposes of vehicular travel or parking;

(5) Except as provided in division (D) or (E) of this section, while being in or on a stationary motor vehicle on any street, highway, or other public or private property open to the public for purposes of vehicular travel or parking.

R.C. 4301.62(B).

**{¶16}** Intoxicating liquor is defined in R.C. 4301.01(A)(1) as including "all liquids and compounds, other than beer, containing one-half of one per cent or more

6

of alcohol by volume which are fit to use for beverage purposes, from whatever source and by whatever process produced." Whereas beer "includes all beverages brewed or fermented wholly or in part from malt products and containing one-half of one per cent or more of alcohol by volume." R.C. 4301.01(B)(2).

{¶17} Ohio case law on this issue is sparse. While courts generally require some additional proof besides the label on the bottle or can that the contents are an intoxicating liquor, they do not require a lab test of the alcohol volume. In *In re Howman*, 5th Dist. Ashland No. CA-1059, 1994 Ohio App. LEXIS 946, 4 (Mar. 8, 1994), the Fifth District held that the absence of evidence as to the specific alcohol content of the tequila that the minor admitted drinking was irrelevant in an underage-consumption case, given the "overwhelming" evidence that the minor was intoxicated, including the strong odor of an alcoholic beverage on the individual, paired with vomit found on the minor's clothing and her inability to stand or walk without assistance. Also instructive is *City of Cleveland v. Large*, 8th Dist. Cuyahoga No. 70825, 1997 Ohio App. LEXIS 497, 1 (Feb.13, 1997), where the defendant was convicted of violating an administrative code regulation for possessing, displaying, and consuming an alcoholic beverage in a state park. Large was arrested after an officer on bike patrol saw him seated in his car drinking from a Busch beer can and also noticed several other unopened cans on the seat of the car. The defendant argued on appeal that the state failed to prove that he had consumed an alcoholic beverage because the state had not submitted the contents of the can for scientific testing. *Id*. at 3. The Eighth District rejected this argument, holding that "any rational trier of fact could find that the contents of the Busch beer can were alcoholic based upon Officer Mawcomb's testimony that he noticed unopened cans next to appellant on the seat and poured the

7

contents of the can out on to the ground, giving him an opportunity to observe the contents of the can." *Id.* at 4. *Compare State v. Poulton*, 5th Dist. Delaware No. 13 CAA 07 0052, 2014-Ohio-2602, ¶ 88-89 (evidence that defendant gave a bottle of Yuengling lager to a minor, without any evidence that the liquid was beer, was insufficient to sustain a conviction for furnishing beer to a minor). Courts have applied similar reasoning in open-container cases outside of Ohio as well. For instance, testimony that a beverage smells like liquor or beer is routinely deemed sufficient to support an open-container conviction. *See People v. Angell*, 184 Ill.App.3d 712, 717-18, 133 Ill.Dec. 240, 540 N.E.2d 1106 (1989) (police officer's testimony that the liquid in the cans was beer based on its smell was sufficient to support open-container conviction); *Derosiers v. District of Columbia*, 19 A.3d 796, 801 (D.C.2011) (officer's testimony that liquid in a glass jar smelled like vodka, combined with circumstantial evidence that the appellant had recently been drinking, was sufficient proof that the beverage contained the statutorily proscribed amount of alcohol); *State v. Fuller*, 2009 Kan.App.Unpub. LEXIS 585, 8 (July 24, 2009) (holding that evidence was sufficient to support an open-container conviction where the bottle had a Barton Vodka label, was one-quarter full, and the "bottle smelled of vodka"); *Workman v. United States*, 96 A.3d 678, 681 (D.C.2014) (holding that an opened bottle of tequila with a label indicating an alcohol content of 40 percent, without testimony about its smell or taste, was insufficient to prove the contents of the bottle were an alcoholic beverage); *B.B. v. State*, 117 So.3d 442, 444 (Fla.App.2013) (holding that the "State's case lacked any evidence identifying the substance inside" a can that was alleged to contain alcohol, despite the clear labeling on the can, when the defendant was not breathalyzed, and the liquid was not smelled or tested).

8

**{¶18}** Similarly, signs of an individual's intoxication, namely an odor emanating from their person or car, can also be sufficient to support a conviction for possession of an open container. *See United States v. Eiland*, E.D.Tenn. No. 3:17-PO-8, 2017 U.S. Dist. LEXIS 66486, 12-13 (May 2, 2017) (holding that the government had proven beyond a reasonable doubt that defendant possessed open containers of alcohol where testimony established that the car smelled like an alcoholic beverage, spilled beer was on the floorboard, and partially consumed beers were found in a soft-sided cooler); *People v. Hughes*, 2019 Ill.App.Unpub. LEXIS 1245, 8 (June 28, 2019) (testimony that defendant slurred his words, had bloodshot, watery eyes, and smelled of alcohol was sufficient to demonstrate that a half-full bottle of Don Julio tequila was, without smelling or testing, an alcoholic beverage); *Walters v. State*, 757 S.W.2d 41, 44 (Tex.App.1988) (evidence that appellant was intoxicated and smelled of an alcoholic beverage, and that the liquid inside the Budweiser was cold was sufficient to support an open-container conviction); *State v. Hoque*, 269 N.C.App. 347, 357, 837 S.E.2d 464 (2020) (an open-container conviction was based on sufficient evidence where the officer testified that an opened bottle of New Amsterdam vodka was found between the defendant's legs while he was seated in the driver's seat of a running car, that defendant smelled of alcohol, and that defendant had slurred speech along with red, watery, glassy, and bloodshot eyes); *Kalb v. State*, 276 Ga.App. 394, 395, 623 S.E.2d 230 (2005) (the defendant's statement to police that he drank a beer while driving, combined with an empty can of beer, was sufficient to support a conviction for possession of an open container).

**{¶19}** Hayes asserts that the only evidence that the bottle found in his truck contained an "intoxicating liquor" was Officer Bailey's testimony that the bottle

contained "a clear liquid that would be consistent with vodka" and the label of the bottle itself, which read "Lawrence Diluted Vodka." However, there was also testimony from both officers that Hayes had "a strong odor of an alcoholic beverage" on both his person and in his car, that his speech was slurred, and that his eyes were bloodshot. This evidence, viewed in the light most favorable to the city, was sufficient to support a conviction for possession of an open container. *See Jones*, 166 Ohio St.3d 85, 2021-Ohio-3311, 182 N.E.3d 1161, at ¶ 16. Moreover, while Hayes had alternative explanations for his appearance, behavior, and odor, the court chose to believe the testimony of the officers, and the record does not demonstrate that, in so doing, the court clearly lost its way and created a manifest miscarriage of justice. *See Green*, 1st Dist. Hamilton No. C-190280, 2020-Ohio-4370, at ¶ 9.

**{¶20}** Hayes's conviction for possession of an open container was therefore supported by the sufficiency and the weight of the evidence.

### B. Improper Passing

**{¶21}** We next turn to Hayes's conviction for improper passing. As noted earlier in this opinion, while Hayes was ticketed for weaving under Cincinnati Municipal Code 506-76, he was convicted of improper passing under Cincinnati Municipal Code 506-70. Neither party addresses this inconsistency.[2] While Hayes acknowledges that the conviction was for improper passing, he does not set forth the elements of the offense or explain how the evidence is lacking with respect to those elements. Rather, his argument focuses on the fact that his weaving was not

---

[2] We note that the ticket was handwritten and the "76" on the ticket could easily be misread as "70." Thus, this seems to be a data entry issue on the court's journal entry. The B charge in the case numbered 21/TRC/27922 states "Improper Passing" in violation of Cincinnati Municipal Code 506-70 and in handing down the conviction and sentence, the trial court only referred to this charge as the "B charge."

documented and that when the officers activated their recording system, he was driving normally.

**{¶22}** The city argues that "[t]he Cincinnati Municipal Code codifies 'improper passing' as weaving under CMC 506-76." However, as stated above, while Hayes was charged with violating Cincinnati Municipal Code 506-76, he was convicted of violating Cincinnati Municipal Code 506-70, which is improper passing. It is this court's task when reviewing for sufficiency to determine whether the evidence is sufficient to support the *conviction*.

**{¶23}** Cincinnati Municipal Code 506-70 is titled "Passing in Opposite Direction," and it provides that "Operators of vehicles proceeding in opposite directions shall pass each other to the right, and upon roadways having width for not more than one line of traffic in each direction each operator shall give to the other one-half or as nearly one-half of the main traveled portion of the roadway as is reasonably possible."

**{¶24}** The testimony from Officer Zick at trial was that MLK had two lanes of traffic in each direction. She stated that Hayes weaved in and out of marked lines while trying to go around other cars. Officer Bailey similarly testified that Hayes "weaved in and out of lanes without using turn signals and went around a vehicle as well." While this evidence would likely be sufficient for a weaving conviction under Cincinnati Municipal Code 506-76,[3] the same is not true for an improper passing conviction under Cincinnati Municipal Code 506-70.

---

[3] Cincinnati Municipal Code 506-76, which codifies the offense of weaving, provides that "No person shall drive a vehicle upon any highway in a weaving or zigzag course, unless such irregular course is made necessary by traffic exigencies."

{¶25} In fact, there was no evidence presented about Hayes driving in a manner that violated Cincinnati Municipal Code 506-70, as this statute imposes a duty on drivers to drive upon the right half of the roadway, and to yield half the roadway to oncoming traffic. *See, e.g., State v. DeWalt*, 7th Dist. Carroll No. 08 CA 852, 2009-Ohio-5283, ¶ 34 (holding that there was sufficient evidence that the defendant crossed the center line of the road and collided with a vehicle traveling in the opposite direction for defendant's conviction under R.C. 4511.26, the state-law equivalent to Cincinnati Municipal Code 506-70). The evidence presented established that Hayes passed, or weaved around, cars traveling in the same direction as his vehicle, rather than passing a vehicle traveling in the opposite direction, as is required for a conviction under Cincinnati Municipal Code 506-70. We therefore hold that Hayes's conviction for improper passing was based on insufficient evidence.

### C. Driving Without a Seat Belt

{¶26} Hayes was convicted of violating R.C. 4513.263(B)(1), which provides that "[n]o person shall * * * [o]perate an automobile on any street or highway unless that person is wearing all of the available elements of a properly adjusted occupant restraining device." He argues that Officer Zick's testimony that he was not wearing a seat belt when she approached him after initiating the traffic stop was not sufficient to support his conviction. The city agrees and concedes that Hayes's conviction for a violation of R.C. 4513.263 was not supported by sufficient evidence.

{¶27} Evidence that a driver was unbuckled during the traffic stop, without more, is not enough to prove a violation of the statute. *State v. Harrison*, 161 Ohio App.3d 573, 2005-Ohio-2983, 831 N.E.2d 478, ¶ 27-46 (5th Dist.); *State v. Gregg*, 6th Dist. Huron No. H-06-030, 2007-Ohio-4611, ¶ 14 ("a motorist cannot be convicted of

12

failing to wear a seat belt unless the officer observes the motorist not wearing the seat belt while the car is in motion and before the stop").

**{¶28}** Here, the only evidence supporting Hayes's conviction for driving without a seat belt was Officer Zick's testimony that he was not wearing a seat belt when she approached him. No evidence was presented that Hayes operated the vehicle without wearing his seatbelt. His conviction for driving without a seat belt was therefore based on insufficient evidence.

### D. Traffic Light Violation

**{¶29}** We last consider Hayes's conviction for running a red light under Cincinnati Municipal Code 506-40. His argument concerning this conviction primarily challenges the manifest weight of the evidence, rather than its sufficiency, as he contends that the officers' testimony in support of his conviction was not worthy of belief.

**{¶30}** Both Officer Zick and Officer Bailey testified that Hayes was traveling westbound on MLK and ran a red light at the Dixmyth Avenue intersection. Hayes, however, points to Officer Bailey's statements on a body-worn camera video that was admitted at trial that the infraction took place at the intersection of Hopple, rather than MLK, and Dixmyth. Hayes also asserts that the officers' testimony differed about how long the light had been red prior to him entering the intersection. Officer Zick testified that the light was solid red when he entered the intersection, but that it had "just switched over." Officer Bailey, however, testified that the light had been "solid red for quite a bit before he drove through it." Hayes testified that he did not run the red light at all.

**{¶31}** The only true inconsistency raised by Hayes is Officer Bailey's comment on the body-worn camera about the relevant intersection. But even if this, as well as the other alleged inconsistencies regarding the length of time that the light was red are considered, they "merely raise peripheral credibility determinations that the trial court could resolve based on the totality of the evidence." *State v. Scott*, 2022-Ohio-3020, 195 N.E.3d 244, ¶ 27 (1st Dist.), quoting *State v. Stiver*, 1st Dist. Hamilton Nos. C-210228 and C-210229, 2021-Ohio-3713, ¶ 10.

**{¶32}** The trial court was entitled to reject Hayes's testimony that he did not run the red light and to believe the officers' testimony on that point, and the record does not demonstrate that, in so doing, the court clearly lost its way and created a manifest miscarriage of justice. *See Green*, 1st Dist. Hamilton No. C-190280, 2020-Ohio-4370, at ¶ 9. Hayes's conviction for a traffic light violation was supported by sufficient evidence and was not against the manifest weight of the evidence.

### III. Conclusion

**{¶33}** Hayes's assignment of error is sustained in part and overruled in part. In the appeal numbered C-220529, his convictions in the trial court cases numbered 21TRC-27922B and 21TRC-27922C for improper passing and driving without a seat belt are reversed as they were based on insufficient evidence and he is discharged on those counts. The judgments of the trial court are otherwise affirmed.

Judgments affirmed in part, and reversed and appellant discharged in part.

**ZAYAS** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.