[Cite as *State v. Poulton*, 2014-Ohio-2602.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

     Plaintiff-Appellee

-vs-

CHRISTOPHER T. POULTON

     Defendant-Appellant

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Sheila G. Farmer, J.
Hon. Patricia A. Delaney, J.

Case No. 13 CAA 07 0052

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Delaware County Common Pleas Court, Case No. 11CR-I-12-0661 |
| JUDGMENT: | Reversed |
| DATE OF JUDGMENT ENTRY: | June 16, 2014 |

APPEARANCES:

For Plaintiff-Appellee

CAROL HAMILTON O'BRIEN
Delaware County Prosecuting Attorney
MARK C. SLEEPER
Assistant Prosecuting Attorney
140 N. Sandusky St., 3rd Floor
Delaware, Ohio 43015

For Defendant-Appellant

MICHAEL C. HOAGUE
17 Carriage Drive
Delaware, Ohio 43015-1506

*Hoffman, P.J.*

{¶1}   Defendant-appellant Christopher T. Poulton appeals his May 31, 2013 convictions on one count of child endangering and one count of furnishing beer to a minor entered by the Delaware County Court of Common Pleas.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On December 16, 2011, A.F. and M.O., both juveniles, were visiting Appellant's house, playing card games and hanging out in the garage.  At trial, A.F. testified Appellant told him to "go get some beers," so he went into the kitchen and took some Yuengling from the refrigerator and opened the bottle.  He took a few sips and gave the rest to M.O.

{¶3}   During the card game, Appellant told A.F. and M.O. he could make a "flame thrower."  Appellant took an aerosol can of carburetor fluid off the shelf, pointed it at the concrete, held a lighter in front of the nozzle, and lit the lighter while spraying the carburetor fluid into the flame.  The flame projected to the side and towards A.F. who was seated 5-6 feet away.  The flame hit A.F. in the upper neck and lower face area. Appellant helped A.F. by putting cold water and aloe on the burns.

{¶4}   A.F. suffered first and second degree burns and blisters on his neck, face and lip.  He made a full recovery and has no scarring or permanent injury.

{¶5}   The Delaware County Grand Jury indicted Appellant on four counts of aggravated arson, in violation of R.C. 2909.02(A)(A); one count of felonious assault, in violation of R.C. 2903.11(A)(1); one count of felony endangering children, in violation of

R.C. 2919.22 (B); and one count of furnishing beer to a minor, in violation of R.C. 4301.69(A).

{¶6}   The matter proceeded to a bench trial following Appellant's waiver of his right to a jury trial.  At the conclusion of the State's case, Appellant moved the trial court for a judgment of acquittal pursuant to Ohio Criminal Rule 29(A).  The trial court sustained the motion with regard to the aggravated arson and felonious assault charges finding there was insufficient evidence Appellant caused or threatened serious physical harm.  Instead, the trial court found there was sufficient evidence, when considered in a light most favorable to the state of Ohio, to sustain a conviction on the lesser included first-degree misdemeanor offense of child endangering.  The court also overruled the motion for acquittal as to the furnishing beer to a minor charge.

{¶7}   The trial court found Appellant guilty of child endangering, in violation of R.C. 2919.22(B)(2)(e) and furnishing beer to a minor, in violation of R.C. 4301.69(A).

{¶8}   The trial court imposed a three-year term of community control sanctions with the potential for a six-month jail term to be imposed consecutively on each charge in the event Appellant violates the community control sanctions.

{¶9}   Appellant appeals, assigning as error:

{¶10}   "I. THE TRIAL COURT ERRED AND PREJUDICED THE SUBSTANTIAL RIGHTS OF THE APPELLANT WHEN IT OVERRULED THE CRIMINAL RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL AT THE CONCLUSION OF THE STATE'S CASE IN CHIEF DUE TO THE ABSENCE OF EVIDENCE THAT APPELLANT FURNISHED 'BEER' AS DEFINED IN REVISED CODE SECTION 4301.01(B)(2) AND THEREBY VIOLATED HIS RIGHTS UNDER THE DUE PROCESS CLAUSE AND

EQUAL PROTECTION CLAUSE OF THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶11} "II. THE TRIAL COURT ERRED AND PREJUDICED THE SUBSTANTIAL RIGHTS OF THE APPELLANT WHEN IT FOUND HIM GUILTY OF FURNISHING BEER TO A MINOR BASED UPON INSUFFICIENT EVIDENCE AND THEREBY VIOLATED HIS RIGHTS UNDER THE DUE PROCESS CLAUSE AND EQUAL PROTECTION CLAUSE OF THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶12} "III. THE VERDICT OF THE TRIAL COURT FINDING THE APPELLANT GUILTY OF FURNISHING BEER TO A MINOR WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THUS VIOLATED APPELLANT'S SUBSTANTIAL RIGHTS UNDER THE DUE PROCESS CLAUSE AND EQUAL PROTECTION CLAUSE OF THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶13} "IV. THE TRIAL COURT VIOLATED THE RULE OF STRICT CONSTRUCTION AND COMMITTED PREJUDICIAL ERROR WHEN IT APPLIED AN OVERLY BROAD DEFINITION OF 'ABUSE A CHILD' AND THUS VIOLATED APPELLANT'S SUBSTANTIAL RIGHTS UNDER THE DUE PROCESS CLAUSE AND EQUAL PROTECTION CLAUSE OF THE UNITED STATES AND OHIO CONSTITUTIONS.

{¶14} "V. THE VERDICT OF THE TRIAL COURT FINDING THE APPELLANT GUILTY OF THE LESSER INCLUDED MISDEMEANOR OFFENSE OF ENDANGERING CHILDREN WAS BASED UPON INSUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THUS VIOLATED APPELLANT'S SUBSTANTIAL RIGHTS UNDER THE DUE PROCESS CLAUSE AND

EQUAL PROTECTION CLAUSE OF THE UNITED STATES AND OHIO CONSTITUTIONS."

I, II, and III.

**{¶15}** Appellant's first three assigned errors raise common and interrelated issues; therefore, we will address the arguments together.

**{¶16}** A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace,* 109 Ohio St.3d 255, 2006–Ohio–2417, 847 N.E.2d 386 (2006), ¶ 37. When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) (stating that "sufficiency is a test of adequacy"); *State v. Jenks,* 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991). The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jenks,* 61 Ohio St.3d at 273, 574 N.E.2d 492. Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins,* 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring).

**{¶17}** Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *State v.*

*Hill,* 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant,* 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts,* 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh,* 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶18} When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider witness credibility. A reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *E.g., State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. DeHass,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"*Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶19} If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *State v. Eley,* 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus. Generally, a reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d

541, quoting *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717; *accord State v. Lindsey,* 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

**{¶20}** Appellant was convicted of furnishing beer to a minor, in violation of R.C. 4301.69(A), which reads:

**{¶21}** "(A) Except as otherwise provided in this chapter, no person shall sell beer or intoxicating liquor to an underage person, shall buy beer or intoxicating liquor for an underage person, or shall furnish it to an underage person, unless given by a physician in the regular line of the physician's practice or given for established religious purposes or unless the underage person is supervised by a parent, spouse who is not an underage person, or legal guardian."

**{¶22}** R.C. 4301.01(B)(2) defines "beer" as all beverages brewed or fermented wholly or in part from malt products and containing one-half of one per cent or more, but not more than twelve per cent, of alcohol by volume."

**{¶23}** Appellant maintains it is not generally known "Yuengling" is a brewed or fermented malt beverage containing at least one-half of one percent and not more than twelve percent alcohol by volume. Appellant argues the statute requires the State prove with precision the substance furnished to the minor was, in fact, beer as defined in the statute, and Appellant contends a trial court cannot take judicial notice of the elements of an offense.

**{¶24}** A.F. testified at trial,

**{¶25}** "Q. What did you do when you got there?

**{¶26}** "A. We went to his garage and turned on the radio and talked and drunk and smoked weed. We played a card game of kings; it was a drinking game.

**{¶27}** "* * *

**{¶28}** "Q. How do you play kings?

**{¶29}** "A. Basically, someone shuffles a deck, you pick out cards, if I remember correctly, each card you have a different thing you are suppose to do.  Like one might say like take a drink of alcohol or another might say play truth or dare.  Never have I ever - -

**{¶30}** "Q. Were you drinking while you were playing kings?

**{¶31}** "A. Yes.

**{¶32}** "Q. How did you get to the beer?

**{¶33}** "MR. HOAGUE: Objection, leading the witness.

**{¶34}** "THE COURT: Sustained.

**{¶35}** "BY MR. SLEEPER:

**{¶36}** "Q. I'm sorry.  What were you - -

**{¶37}** "A. Yingling [sic].

**{¶38}** "Q. Where did the Yingling [sic] come from?

**{¶39}** "A. Chris' dad's fridge that's in the house.

**{¶40}** "Q. Did you go in there on your own and take it out of the fridge?

**{¶41}** "A. Yes, sir, on Chris' request.

**{¶42}** "Q. How exactly did that happen?

**{¶43}** "A. He told me to go in and get a few beers, so I went in and got some.

**{¶44}** "Q. All three of you drinking at this point and playing this game?

**{¶45}** "A. Yes.

**{¶46}** "Q. How much did you have to drink?

**{¶47}** "A. Just a few sips of it.

**{¶48}** "Q. How did that happen that you were playing a drinking game?

**{¶49}** "A. I didn't really like it, so I didn't really want to drink a whole lot that night, so I had M.O. drink most of mine.

**{¶50}** "Q. Do you know how much M.O. had to drink?

**{¶51}** "A. About two beers.

**{¶52}** "Q. How about the defendant?

**{¶53}** "A. Two or Three.

**{¶54}** "Q. About how long did you play kings?

**{¶55}** "A. About an hour.

**{¶56}** "Q. You said you also smoked weed during that time?

**{¶57}** "A. Yes.

**{¶58}** "Q. When did that happen?

**{¶59}** "A. Sometime during the game, I believe it was M.O. brought out the weed and asked if I wanted to smoke some.

**{¶60}** "* * *

**{¶61}** "Q. I want to go back to the part you talked about the beer you consumed at the defendant's house.  Can you tell the court what kind was that?

**{¶62}** "A. Yingling [sic].

**{¶63}** "Q. Was that cans, bottles or something else?

**{¶64}** "A. Glass bottles.

**{¶65}** "Q. Was it sealed at the time that you opened it?

**{¶66}** "A. Yes.

{¶67} "Q. Have you had beer before?

{¶68} "A. Yes.

{¶69} "Q. And did it taste like beer?

{¶70} "MR. HOAGUE: Objection.

{¶71} "THE COURT: Overruled.

{¶72} "THE WITNESS: Yes."

{¶73} Tr. at 97-121.

{¶74} Further, Appellant admitted in his interview with the Delaware Police Department A.F. and M.O had both had Yuengling Lager:

{¶75} "Q. Okay.

{¶76} "A. I mean, they were drinking too.  M.O. had just as much - -

{¶77} "Q. And that's what I'm hearing and I'm just - -

{¶78} "A. M.O. had almost as much alcohol as I did.

{¶79} "Q. How many did M.O. drink?

{¶80} "A. I believe four.

{¶81} "Q. How many did A.F. drink?

{¶82} "A. One.

{¶83} "Q. What did they drink?  Was it beers?  Was it Yager?

{¶84} "A. Same, Yuengling Lager."

{¶85} Tr. at 13.

{¶86} Though not cited in either brief, this Court addressed an analogous situation in *In the Matter of Howman* (March 8, 1994), Ashland App. No. CA-1059. Therein, the appellant argued insufficiency of evidence to sustain a conviction on

underage consumption, in violation of R.C. 4301.632 [Repealed.] The majority in *Howman*, supra, found the absence of evidence as to the specific amount of alcohol in tequila irrelevant in light of "sufficient, if not overwhelming evidence" the minor did consume an intoxicating liquor while at a friend's party. In *Howman*, the trial court looked to evidence the minor had vomit on the front of her sweater, could not stand up, needed assistance to walk, couldn't tell authorities her name or where her parents worked or lived, was unsteady on her feet, had bloodshot, glassy, and dilated eyes, and a very strong odor of alcoholic beverage on her person.

**{¶87}** We find the facts presented in *Howman* distinguishable from the case presented herein. Here, there is no evidence of intoxication of the minor. In *Howman*, there was clearly sufficient, competent and credible evidence to support the conclusion the appellant had, in fact, consumed alcohol in violation of then existing R.C. 4301.632. The statute herein requires proof the person furnished beer or intoxicating liquor to an underage person. See, R.C. 4301.69(A). Additionally, R.C. 4301.01(B)(2) defines "beer" as all beverages brewed or fermented wholly or in part from malt products and containing one-half to one per cent or more, but not more than twelve per cent, of alcohol by volume. The legislature has created an additional element of the offense which the state must produce proof beyond a reasonable doubt.

**{¶88}** Upon review of the record, we find the State did not produce evidence of the specific alcoholic content of "Yuengling" or any alcoholic beverages alleged to have been consumed by A.F. on the date in question. The State did not request the trial court take judicial notice Yuengling is, in fact, beer, and the trial court did not indicate it was taking judicial notice of the same. Even if requested or if specifically stated, such

would be improper. Judicial notice cannot be taken of the elements of an offense. Rather, the State must offer proof of every element to sustain a conviction unless the accused stipulates to that element.

**{¶89}** We find the State did not present sufficient evidence Appellant furnished "beer" to a minor.

**{¶90}** Appellant's first, second and third assigned errors are sustained.

IV. and V.

**{¶91}** Appellant's fourth and fifth assigned errors raise common and interrelated issues; therefore, we will address the arguments together.

**{¶92}** Appellant maintains his conviction for endangering a child is against the manifest weight and sufficiency of the evidence, and the trial court used an overly broad definition of abuse of a child.

**{¶93}** Appellant was convicted of the lesser included offense of endangering a child, in violation of R.C. 2919.22(B), which reads:

**{¶94}** "(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

**{¶95}** "(1) Abuse the child;"

**{¶96}** A.F. testified at trial as to the incident at issue,

**{¶97}** "Q. Tell us about what happened when your friend got up from the table.

**{¶98}** "A. I guess he went to go get a can of what was later called a can of carburetor cleaner, in an aerosol can, and he said look at this. And I looked over, glanced over a little bit, and heard a hissing sound coming from the can, there was a

wet texture on my face, he lit the lighter in front of the can, spraying liquid on my face and it was caught on fire.

**{¶99}** "* * *

**{¶100}** "Q. Where was the defendant when he made this flame thrower?

**{¶101}** "A. Right side, by the car.

**{¶102}** "Q. About how far away from you was he when it happened?

**{¶103}** "A. About five three to five feet.

**{¶104}** "Q. Was the garage door up or down?

**{¶105}** "A. It was down.

**{¶106}** "Q. Was it cold out in the garage?

**{¶107}** "A. I don't think it was; he had the heat on.

**{¶108}** "Q. You said you were in there, there was a car on the right side of the garage?

**{¶109}** "A. Yes.

**{¶110}** "Q. And then the table to the back at the left side?

**{¶111}** "A. Yes.

**{¶112}** "Q. Open area kind of in front of that?

**{¶113}** "A. Yes.

**{¶114}** "Q. Did you hear the defendant say anything before you saw the flame?

**{¶115}** "A. Hey, look at that or this.

**{¶116}** "Q. Where did the flame hit you?

**{¶117}** "A. Approximately on my right side of my face.  Then it kind of spread a little bit to the left side.

**{¶118}** "Q. Did it hit anything else first before it hit you face?

**{¶119}** "A. No.

**{¶120}** "Q. You had a good view, you turned and looked?

**{¶121}** "A. Yes."

**{¶122}** Tr. at 101-103.

**{¶123}** This Court has sanctioned the use of the definition of abuse in Chapter 21 of the Ohio Revised Code. Ohio Jury Instructions, CR 519.22, Rev. 5-4-13; *State v. Chukes*, 5th Dist. 02CA-F-01-007, 2002-Ohio-3587. Ohio Revised Code Section 2151.031 reads,

**{¶124}** "As used in this chapter, an "abused child" includes any child who:

**{¶125}** "***

**{¶126}** "(B) Is endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child;

**{¶127}** "(C) Exhibits evidence of any physical or mental injury or death, inflicted **other than by accidental means**, or an injury or death which is at variance with the history given of it. Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child is not an abused child under this division if the measure is not prohibited under section 2919.22 of the Revised Code.

**{¶128}** "****"

**{¶129}** The definition used by the trial court and sanctioned by this Court includes an exception for accidental conduct. Here, Appellant's conduct, although reckless, nevertheless was still accidental in character.

**{¶130}** The victim himself testified he understood Appellant's actions to be accidental in nature,

**{¶131}** "Q. Chris kept apologizing to you.

**{¶132}** "A. Yeah. I understand that he was sorry for what he did. But I mean it was an accident, yeah, I know that. But it was an accident that could easily [sic] been avoided."

**{¶133}** Tr. at p. 172.

**{¶134}** We find Appellant's actions are not sufficient to qualify as "abuse" under the statutory definition utilized herein.[1]

**{¶135}** Appellant's fourth and fifth assignments of error are sustained.

---

[1] The State could have potentially charged appellant with assault, in violation of R.C. 2903.13, but once the trial court found no serious physical harm, that charge was no longer applicable. Appellant could have been charged with negligent assault, in violation of R.C. 2903.14, as the "flame thrower" arguably qualifies as a dangerous ordinance, pursuant to R.C. 2923.11(K)(2), as the "homemade flame thrower" is an explosive or incendiary device. Finally, Appellant could have been charged with disorderly conduct, in violation of R.C. 2917.11(A)(5), for causing alarm by creating a condition causing a risk of a physical harm.

{¶136} Appellant's convictions in the Delaware County Court of Common Pleas are reversed.

By: Hoffman, P.J.

Farmer, J.  and

Delaney, J. concur