**[Cite as *State v. Scott*, 2022-Ohio-3020.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210627 |
| | | TRIAL NOS. 20TRD-12769 A, B, C |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| CATHERINE SCOTT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed in Part and Reversed in Part, and Appellant Discharged in Part

Date of Judgment Entry on Appeal: August 31, 2022

*Andrew Garth,* City Solicitor, *William T. Horsley,* City Prosecutor, and *Joshua Loya,* Assistant City Prosecutor, for Plaintiff-Appellee,

*Jennifer M. Kinsley,* for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Catherine Scott appeals the judgments of the Hamilton County Municipal Court convicting her of excessive window tint, improper change of course, and running a red light. In two assignments of error, she argues that her convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. For the reasons that follow, we reverse the trial court's judgment as to the window-tint violation, and discharge Scott from further prosecution on that charge. However, we affirm the trial court's judgments in all other respects.

### Facts and Procedure

{¶2} On the evening of June 10, 2020, Scott was driving home from Friendship Park near downtown Cincinnati in her white Hyundai Sonata. Cincinnati Police Lieutenant David Schofield testified that he was in an unmarked police vehicle when he observed a "smaller white Hyundai with heavily dark-tinted windows heading southbound" in the Over-the-Rhine neighborhood. Schofield testified that "the vehicle was driving at a very rapid rate of speed," and that it "did not come to a complete stop at the red light at West Liberty Street to northbound Central Parkway. The vehicle slowed to make the northbound turn and did not use a signal as it made that turn." Schofield communicated this information to uniformed officers Newman and Smith, who saw a vehicle matching the description and stopped it.

{¶3} Newman and Smith approached the vehicle and ordered the driver, Scott, to roll down all of her windows. Both officers testified that they could not see inside the vehicle due to the dark tint. The body-camera footage of the traffic stop shows Scott's front windows rolled down approximately halfway, while her back windows are rolled down only a few inches. After Scott did not roll her windows down

2

further, Newman approached the vehicle and ordered Scott to step out. Scott told the officers she was afraid and did not exit the vehicle. Eventually, Smith reached in and unlocked the doors from the passenger side. Newman opened the driver's side door, grabbed Scott's arm, and pulled her out. Newman testified that Scott walked with him willingly to his cruiser. At no point in the interaction did the officers use a tint meter on her windows.

{¶4} Scott was cited for obstruction of official business, in violation of R.C. 2921.31; excessive window tint, in violation of R.C. 4513.241; improper change of course, in violation of Cincinnati Municipal Code 506-80; and running a red light, in violation of Cincinnati Municipal Code 506-40. She was taken to jail.

{¶5} At trial, Schofield, Newman, and Smith each testified that they have normal vision, and that they could not see inside the vehicle due to the dark tint. Schofield testified that after Scott was pulled over, he came to the scene and confirmed that it was the same car he saw commit the moving violations.

{¶6} A jury acquitted Scott of obstruction of official business, but the court found her guilty of the window-tint violation, improper change of course, and running a red light. She was fined and ordered to pay court costs as appears of record.

{¶7} In rendering its verdict on the window-tint violation, the court noted its reliance on the officers' testimony, stating "[b]oth officers testified that they couldn't see anything in. [sic] So if they can't see anything, * * * they can't see 100 percent in windows. * * * [I]f you can't see in, then the light cannot go through either."

{¶8} Scott timely appealed.

3

*Law and Analysis*

{¶9}   In Scott's first assignment of error, she argues her convictions are not based on sufficient evidence.  In her second assignment of error, Scott contends her convictions are against the manifest weight of the evidence.

{¶10}  When we review a challenge to the sufficiency of the evidence, we ask "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  Sufficiency review "raises a question of law, the resolution of which does not allow the court to weigh the evidence." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph two of the syllabus; *see State v. Guthrie,* 1st Dist. Hamilton No. C-180661, 2020-Ohio-501, ¶ 7.

{¶11}  When we review a challenge to the manifest weight of the evidence, "[w]e must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice."  *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *State v. Thompkins,* 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997).  Under manifest weight, the court should only reverse the conviction and grant a new trial in "exceptional case[s] in which the evidence weighs heavily against the conviction.*" Martin* at paragraph three of the syllabus.  "The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented."  *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16, citing *State v. DeHass,* 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

### *Excessive Window Tint*

{**¶12**}  First, Scott contends that her window-tint conviction is not based on sufficient evidence because the state did not present evidence of light measurements that meet the standard of light transmittance set forth in Ohio Adm.Code 4501-41-03. In response, the state argues that the testimony of the officers that they could not see into the vehicle was sufficient.

{**¶13**}  R.C. 4513.241(A) provides that "[t]he director of public safety * * * shall adopt rules governing the use of tinted glass * * * in or on motor vehicle windshields, side windows, sidewings, and rear windows that prevent a person of normal vision looking into the motor vehicle from seeing or identifying persons or objects inside the motor vehicle."  Those who operate a motor vehicle that does not "conform[] to the requirements of this section and of any applicable rule adopted under this section" are guilty of a minor misdemeanor. R.C. 4513.241(C) and (K).

{**¶14**}  Ohio Adm.Code 4501-41-03, which was adopted pursuant to R.C. 4513.241, provides:

> No person shall operate, * * * any motor vehicle that is required to be registered in this state with any sunscreening material, or other product or material which has the effect of making the windshield or windows nontransparent or would alter the windows' color, increase its reflectivity, or reduce its light transmittance, **unless the product or material satisfies one of the following exceptions**:
>
> * * *
>
> (2) Any sunscreening material or other product or material applied to the **windshield** when used in conjunction with the safety glazing

5

materials of such window, **has a light transmittance of not less than seventy per cent** plus or minus three per cent and is not red or yellow in color.

(3) Any sunscreening material or other product or material applied to the **side windows to the immediate right or left of the driver**, so long as such material, when used in conjunction with the safety glazing materials of such windows, **has a light transmittance of not less than fifty per cent** plus or minus three per cent and is not red or yellow in color.

(4) Any sunscreening material or other product or material applied to **a window not otherwise listed in paragraphs (A)(1) through (A)(3) or (A)(5) of this rule,** except that outside left and right rear view mirrors are required if the sunscreening material is applied to the rear window and the sunscreening material, when used in conjunction with the safety glazing material of such window, has a light transmittance of less than fifty per cent plus or minus three per cent.

(Emphasis added.) Ohio Adm.Code 4501-41-03(A)(2), (3), (4).

{¶15} The code defines "transmittance" as "the ratio of the amount of total light, expressed in percentages, which is allowed to pass through the product or material, including glazing, to the amount of total light falling on the product or material and the glazing." Ohio Adm.Code 4501-41-02(C).

{¶16} Essentially, the rule requires that light transmittance be at least 70 percent (plus or minus three percent) for windshields and at least 50 percent (plus or

minus three percent) for front side windows. The rule does not impose a minimum light transmittance for rear side windows.

{¶17} Administrative rules are "designed to accomplish the ends sought by the legislation enacted by the General Assembly." *Hoffman v. State Med. Bd.*, 113 Ohio St.3d 376, 2007-Ohio-2201, 865 N.E.2d 1259, ¶ 17. A rule has " 'the force of law unless it is unreasonable or conflicts with a statute covering the same subject matter.' " *Nestle R&D Ctr. v. Levin*, 122 Ohio St.3d 22, 2009-Ohio-1929, 907 N.E.2d 714, ¶ 40, quoting *State ex rel. Celebrezze v. Natl. Lime & Stone Co.* 68 Ohio St.3d 377, 382, 627 N.E.2d 538 (1994).

{¶18} Read together, R.C. 4513.241 and Ohio Adm.Code 4501-41-03 provide that tinted windows preventing a person from seeing into the vehicle are prohibited, subject to the standards set forth in the administrative code. The administrative code then sets out the specific light transmittance standards for each window. Because these standards do not conflict with the Revised Code, both apply. *See United States v. Torbert*, 207 F.Supp.3d 808, 819 (S.D.Ohio 2016) (holding that R.C. 4513.241 delegates the task of adopting a tint law to the director of public safety and that "the actual Ohio law which sets forth the specific parameters of permissible tinting is Ohio Admin. Code 4501-41-03.").

{¶19} Scott argues that "evidence of measurement," such as a tint meter, is required to sustain a conviction under the window-tint statute. The state contends that the testimony of the officers that they could not see inside the vehicle is sufficient because the administrative code "does not indicate that it requires the use of any device to detect the amount of light transmittance."

{¶20} While this is an issue of first impression in this district, the Sixth District, in *State v. Giffin*, 6th Dist. Fulton No. F-11-012, 2012-Ohio-6241, reversed a conviction for excessive tint under a local ordinance that referenced and tracked Ohio Adm.Code 4501-41-03, holding that "[a]n element of the offense * * * is proof of the percentage of light transmittance of the defendant's window." *Id.* at ¶ 13. The court went on to say that "[t]his burden of proof may be met by the introduction of a properly performed test using [a tint meter]." *Id.* In *Giffin*, the defendant was pulled over for excessive window tint, and a window-tint meter confirmed that the windows were excessively tinted. *Id.* at ¶ 3-4. At trial though, the officer testified that he had no training on how to use the tint meter, and that he had not followed the instructions prior to using it. *Id.* at ¶ 7. The court refused to admit the results of the tint-meter test, but convicted the defendant anyway based on the officer's testimony that the tint appeared too dark. *Id.* at ¶ 8. The Sixth District reversed and held that "[a]bsent objective measurement or testimonial equivalent by one expressly trained, a violation of the ordinance cannot be found." *Id.* at ¶ 15; *see, e.g., State v. Baker*, 2d Dist. Greene No. 2009 CA 62, 2010-Ohio-2633, ¶ 24 ("Construing the evidence in the light most favorable to the State, the State's evidence established that the tinting on Baker's windows resulted in a light transmittance of less than 50 percent, plus or minus three percent and, consequently, that the windows did not comply with the exception set forth in Ohio Adm. Code 4501-41-03(A)(3).").

{¶21} We likewise hold that in order to sustain a conviction under R.C. 4513.241, the state must prove that the defendant's windows were tinted in violation of the light-transmittance standards set forth in Ohio Adm.Code 4501-41-03. In this case, the state's only evidence was the officers' testimony that they could not see into

8

Scott's vehicle because of the dark tint. Because the state did not present proof that Scott's window violated the light-transmittance standards set forth in the administrative code, Scott's conviction under R.C. 4513.241 was not based on sufficient evidence. While a tint meter may be the most straightforward way to demonstrate this element of the offense, we need not reach the issue of whether a tint meter is the *only* way to meet that burden. Our finding under sufficiency of the evidence obviates the need to review for manifest weight under the second assignment of error.

### *Improper Change of Course and Running a Red Light*

{¶22} Next, Scott argues that her convictions for improper change of course and running a red light are based on insufficient evidence and are against the manifest weight of the evidence.

{¶23} Cincinnati Municipal Code 506-80 provides that "[n]o person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement." Cincinnati Municipal Code 506-40 provides that vehicles must come to a complete stop before turning right at a red light.

{¶24} At trial, Schofield testified that "[t]he vehicle did not come to a complete stop at the red light at West Liberty to northbound Central Parkway" and that it "did not use a signal as it made that turn." Schofield testified that he came to the scene after Scott had been pulled over and confirmed Newman had stopped the correct vehicle. In contrast, Scott testified that she did not drive on Liberty Street that day, or violate any traffic laws. However, viewed in the light most favorable to the prosecution, Schofield's testimony clearly established that Scott violated Cincinnati

9

Municipal Code 506-80 and Cincinnati Municipal Code 506-40. Thus, these convictions were based on sufficient evidence.

{¶25} Scott's manifest-weight challenge primarily raises an issue of witness credibility. She contends that Schofield's testimony was flawed because his testimony about the make of Scott's car was inconsistent, he could not recall the exact location of the car when he first saw it, and he did not testify that her car had temporary tags. Essentially, Scott argues that she was not the driver of the car that Schofield observed violating the law.

{¶26} While Schofield first testified in a suppression hearing that he observed "a newer model, white Kia with dark window tint," rather than a Hyundai, he consistently testified that the car was a smaller white sedan with tinted windows. Although Schofield did not mention that the car had temporary tags, he did verify the identity of the car once it was stopped. Finally, while Schofield's testimony conflicted with Scott's testimony regarding the streets she was driving on, Scott testified that she saw Schofield while she was driving, and that she drove past him within a few blocks of the area that Schofield identified.

{¶27} "[T]hese inconsistencies merely raise peripheral credibility determinations that the trial court could resolve based on the totality of the evidence." *State v. Stiver*, 1st Dist. Hamilton Nos. C-210228 and C-210229, 2021-Ohio-3713, ¶ 10. We do not believe this is one of those "exceptional case[s] in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus. Scott's second assignment of error is overruled.

### *Conclusion*

**{¶28}** In light of the foregoing analysis, we sustain Scott's first assignment of error in part and overrule it in part. We reverse her window-tint conviction, and discharge her from further prosecution on that charge. However, we overrule her second assignment of error as to her convictions for improper change of course and running a red light and affirm the court's judgments in all other respects.

Judgments affirmed in part and reversed in part, and appellant discharged in part.

**ZAYAS, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.