[Cite as *State v. McDonald*, 2023-Ohio-464.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 111724 |
| v. | : | |
| DANIEL MCDONALD, JR., | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** February 16, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-664643-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Frank Romeo Zeleznikar and Cedric Ware, Assistant Prosecuting Attorneys, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Robert B. McCaleb, Assistant Public Defender, *for appellee.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Plaintiff-appellant, the state of Ohio ("the state"), appeals the trial court's July 7, 2022 judgment granting defendant-appellee's, Daniel McDonald, Jr.

("McDonald"), motion to suppress. After a careful review of the facts and pertinent law, we reverse.

**Procedural and Factual History**

{¶ 2} In November 2021, a Cuyahoga County Grand Jury returned a three-count indictment against McDonald. Count 1 charged having weapons while under disability; Count 2 charged improperly handling firearms in a motor vehicle; and Count 3 charged carry a concealed weapon. The charges resulted from a September 2021 stop, and subsequent search of McDonald's vehicle on Interstate 71 in Strongsville, Ohio.

{¶ 3} McDonald filed a motion to suppress. A hearing was held on the motion, at which the sole witness was Ohio State Trooper David Pangburn ("Trooper Pangburn"), who conducted the traffic stop of McDonald's vehicle on the day in question. The following testimony was elicited at the hearing.

{¶ 4} Trooper Pangburn testified that the stop occurred on the morning of September 3, 2021, at which time he was stationed at milepost 233 as a "road trooper." Tr. 23. The trooper explained that a road trooper's responsibilities include conducting traffic stops and aiding disabled motorists.

{¶ 5} Trooper Pangburn testified that he noticed "extremely dark window tint" on McDonald's vehicle as McDonald drove by his post and conducted a traffic stop of the vehicle for that reason. *Id.* at 13. According to Pangburn, the tint was so dark that he could not see anyone in the vehicle.

{¶ 6} The trooper testified that the driver side and front passenger windows were of particular concern to him. Those two windows have to allow 50 percent of light in and he could "visually [see] that [McDonald's] window tint was more than 50 percent"; he "literally could not see anyone in the car." *Id.* at 15, 24.[1] Upon approaching the vehicle, Trooper Pangburn asked McDonald to "roll down all the windows because [he] could not see into the car." *Id.* at 16.

{¶ 7} Trooper Pangburn admitted that he did not perform field testing to determine the tint. He explained that his cruiser did not have the necessary device for the testing — they are generally in the cruisers for day shift, which he usually does not work but was working on the day in question due to a coverage issue. However, the trooper testified that, at the time of the stop, he had been on road patrol for over three years and issued numerous window-tint violations. He testified that on the occasions he has had the device to test the tint he has never been wrong. Trooper Pangburn further testified that after he graduated from the police academy he was partnered with a coach for 90 days and he learned window-tint detection during that time.

{¶ 8} The stop was captured on Trooper Pangburn's dash camera; the relevant portion of the video was played for the trial court and the video was admitted into evidence. A still picture of McDonald's vehicle from the dash camera video was also admitted into evidence.

---

[1] Trooper Pangburn testified that the front windshield cannot be tinted below the rearview mirror and there is no limitation on how much tint the back two windows and rear window can have.

**The Trial Court's Decision**

{¶ 9} The trial court issued its decision to grant McDonald's motion to suppress from the bench at the conclusion of the suppression hearing. The court started out by saying it had "some concerns about the stop. * * * Everything that takes place afterwards, it really is not relevant." Tr. 44. The court elaborated on its concern as follows:

> And the problem with the way I see the stop right now is that there's no comparison that's been provided to the Court. It looks like, when I see this picture * * * I can see into the window from here. I don't know if anybody else can or not, but I can see in and I see that.
>
> If there's a break-out of what the test is supposed to be, a certain percentage of the windows of the front passenger/driver. I mean, the front window, the windshield, the front windshield, the passenger's window and the driver's window, there hasn't been any evidence presented to the Court as to what the ratio would be.
>
> I think we could all assume that it's not a hundred percent, because if it's a hundred percent you couldn't drive the car. So it's got to be something less than a hundred percent. * * * And I know all windows probably have some sort of tint in them * * * when * * * the car is produced. So what that percentage is between, for purposes of [Trooper Pangburn] stopping [McDonald], I don't have that in front of me.

*Id.* at 45.

{¶ 10} The court noted the state's argument — that even if Trooper Pangburn was incorrect that the tint was illegal — the stop was nonetheless permissible because an objectively reasonable officer would have believed the tint was illegal. The court found that argument "pretextual" because the trooper "didn't do any tests after to confirm * * * [he] didn't do any measurements as to what the front

passenger is, what the front driver's is, what the windshield is." *Id.* at 46. The court reasoned that "[s]o as it stand[s] right now, I don't know that it's in violation. [Trooper Pangburn] seems to think it is. * * * But the evidence presented in court isn't such that I could make a finding that he's right." *Id.*

{¶ 11} On July 7, 2022, the trial court filed a judgment that, in relevant part, states that "defendant's motion to suppress is granted," without elaboration. On July 12, 2022, the state filed its notice of appeal, attaching the court's July 7 judgment to its notice. On July 15, 2022, the trial court issued another judgment, which elaborated on its reasons for granting McDonald's motion to suppress.

{¶ 12} The state appeals, raising the following sole assignment of error for our review: "The trial court erred in granting Daniel McDonald's Motion to Suppress."

**Law and Analysis**

**Trial Court's July 15, 2022 Judgment a Nullity**

{¶ 13} Initially, we consider the effect of the trial court's July 15, 2022 judgment, which was issued after the state filed its notice of appeal.

{¶ 14} Although a court "speaks through its journal entries," clerical errors may be corrected "in order to conform to the transcript of the proceedings." *State v. Lugo*, 8th Dist. Cuyahoga No. 103893, 2016-Ohio-2647, ¶ 3, citing *State v. Steinke*, 8th Dist. Cuyahoga No. 81785, 2003-Ohio-3527, ¶ 47, and Crim.R. 36. Crim.R. 36 states, "Clerical mistakes in judgments, orders, or other parts of the

record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." A "clerical mistake" is ""a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment."" *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 15, quoting *State ex rel. Cruzado v. Zaleski*, 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263, ¶ 19, quoting *State v. Brown*, 136 Ohio App.3d 816, 819-820, 737 N.E.2d 1057 (3d Dist.2000). A nunc pro tunc entry is a means by which a court can correct a clerical mistake in an order it previously entered that fails to reflect the court's true action. *State v. Chislton*, 8th Dist. Cuyahoga No. 108840, 2021-Ohio-697, ¶ 15.

{¶ 15} "'[O]nce an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.'" *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 129 Ohio St.3d 30, 2011-Ohio-626, 950 N.E.2d 149, ¶ 13, quoting *State ex rel. Rock v. School Emps. Retirement Bd.*, 96 Ohio St.3d 206, 2002-Ohio-3957, 772 N.E.2d 1197, ¶ 8; *see also State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 8 ("'An appeal is perfected upon the filing of a written notice of appeal. * * * Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal.'"), quoting *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 9.

{¶ 16} Thus, generally, the timely filing of a notice of appeal precludes a trial court from issuing further orders affecting matters at issue in the appeal. Where a trial court enters an order without jurisdiction, its order is void and a nullity. *State v. Williamson*, 8th Dist. Cuyahoga Nos. 100563 and 101115, 2014-Ohio-3909, ¶ 18, citing *State v. Abboud*, 8th Dist. Cuyahoga Nos. 87660 and 88078, 2006-Ohio-6587, ¶ 13.

{¶ 17} In *State v. Hearn*, 4th Dist. Washington No. 20CA7, 2021-Ohio-594, the trial court's original sentencing journal entry sentenced the defendant to a blanket term of 14 years with a "maximum possible sentence" of 17-and-a-half years, rather than sentencing the defendant to seven years on each of two counts, as imposed at the sentencing hearing. *Id.* at ¶ 3-4. After the defendant filed his notice of appeal, the trial court issued a series of nunc pro tunc entries attempting to correct the error.

{¶ 18} The Fourth Appellate District considered whether the trial court had jurisdiction to issue the nunc pro tunc entries after the defendant had filed his notice of appeal. The court noted that "[o]ther Ohio appellate courts have determined that, although Crim.R. 36 permits a nunc pro tunc entry to be filed 'at any time,' a notice of appeal will divest a trial court of jurisdiction to do so." *Id.* at ¶ 11-13 (citing cases from the Second, Third, Sixth, Ninth, Eleventh and Twelfth Districts). *But see State v. Anderson*, 10th Dist. Franklin No. 11AP-236, 2011-Ohio-6667, ¶ 18-21 (trial court had jurisdiction to issue nunc pro tunc entry to correct "clerical error" that did not change appellant's aggregate sentence even after notice of appeal filed); *State v.*

*Wilson*, 2d Dist. Montgomery No. 24352, 2011-Ohio-5990, ¶ 14-17 (trial court's correction of a clerical error while appeal was pending to recognize that defendant's crime was an aggravated first-degree felony rather than an ordinary first-degree felony was permitted where it "did not interfere with" appellate jurisdiction).

{¶ 19} In *State v. Aarons*, 8th Dist. Cuyahoga No. 110313, 2021-Ohio-3671, the trial court issued three nunc pro tunc entries in an attempt to correct errors in the judgment of conviction after the defendant had filed his notice of appeal.  This court ordered, sua sponte, that the record be supplemented to include the "corrected" sentencing journal entries issued by the trial court after the defendant filed his notice of appeal.

{¶ 20} This court found that the sentencing journal entries directly related to and affected matters assigned as error on appeal and were, therefore, inconsistent with the court's jurisdiction to reverse, modify or affirm the trial court's judgment. Thus, this court held that the trial court lacked jurisdiction to issue its "corrected" entries while the defendant's appeal was pending and those "corrected" entries were void.  *Id.* at ¶ 24, citing *Williamson*, 8th Dist. Cuyahoga Nos. 100563 and 101115, 2014-Ohio-3909, at ¶ 18; *State v. Schrader*, 12th Dist. Fayette Nos. CA2019-12-025 and CA2019-12-026, 2020-Ohio-3925, ¶ 11 (because trial court lacked jurisdiction to file amended sentencing entries while appeal was pending, trial court's amended sentencing entries had "no legal effect"); *State v. Ward*, 187 Ohio App.3d 384, 2010-Ohio-1794, 932 N.E.2d 374, ¶ 45 (2d Dist.) (trial court's nunc pro tunc entry, entered

after trial court was divested of jurisdiction to correct error due to pending appeal, was a "nullity").[2]

{¶ 21} Here, the trial court's July 15, 2022 judgment, which was issued after the state's appeal, directly related to and affected the matter assigned as error on appeal and was, therefore, inconsistent with this court's jurisdiction to reverse, modify, or affirm the trial court's judgment. Accordingly, the trial court lacked jurisdiction to issue its entry while the state's appeal was pending and that entry is void.[3] Further, the July 15, 2022 judgment was not a nunc pro tunc entry — it did not correct a clerical error in the trial court's July 7, 2022 judgment.

{¶ 22} In light of the above, the trial court's July 15, 2022 judgment is a nullity and therefore we will not consider it.

**Standard of Review of Ruling on Motion to Suppress**

{¶ 23} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366, 582

---

[2] This court further found in *Aarons* that, even if the trial court had retained jurisdiction to issue its "corrected" sentencing journal entries while the defendant's appeal was pending, this court lacked jurisdiction to consider the appeal because the only one of the trial court's "corrected" sentencing journal entries that included a separate sentence on all three counts — its June 11, 2021 "corrected" sentencing journal entry — was not a proper nunc pro tunc journal entry. *Id.* at ¶ 27-29.

[3] Even if the trial court had had jurisdiction to issue the July 15, 2022 entry, the state did not file a new or amended notice of appeal.

N.E.2d 972 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982).

**Legality of the Stop**

{¶ 24} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 8-9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A traffic stop by a law enforcement officer must comply with the Fourth Amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8; *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. The existence of reasonable suspicion is determined by evaluating the totality of the circumstances, considering those circumstances "'through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

{¶ 25} "'Reasonable, articulable suspicion' is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance

of the evidence.'" *State v. Fears*, 8th Dist. Cuyahoga No. 94997, 2011-Ohio-930, ¶ 5, quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *see also State v. Scott*, 2d Dist. Clark No. 2013-CA-104, 2014-Ohio-4963, ¶ 12. Any violation of traffic law provides the reasonable suspicion required to make an investigatory stop. *See Whren* at 819; *Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996), syllabus (holding that when a law enforcement officer has an articulable and reasonable suspicion or probable cause to stop a driver for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's subjective motivation for stopping the driver).

{¶ 26} This court has held that window-tint violations provide reasonable suspicion or probable cause for a traffic stop. *See, e.g., State v. Bowie*, 8th Dist. Cuyahoga No. 88857, 2007-Ohio-4297, ¶ 9 (police had probable cause for traffic stop to determine whether car windows were illegally tinted); *State v. Knox*, 8th Dist. Cuyahoga Nos. 98713 and 98805, 2013-Ohio-1662 (same); *Richmond Hts. v. Williams*, 8th Dist. Cuyahoga No. 73500, 1998 Ohio App. LEXIS 5572, *6 (Nov. 15, 1998) (police had probable cause for traffic stop based on reasonable suspicion of excessive window tinting); *Cleveland v. Davis*, 8th Dist. Cuyahoga No. 106780, 2018-Ohio-4706, ¶ 5 (traffic stop for window-tint violation was valid); *In re Coleman*, 8th Dist. Cuyahoga No. 65459, 1993 Ohio App. LEXIS 6311, *6 (Dec. 30, 1993) (lawful traffic stop for violation of municipal ordinance prohibiting tinted windows).

{¶ 27} Here, the trial court acknowledged Trooper Pangburn's belief that the window tint was in violation of the law, but found his belief "pretextual" because the trooper "didn't do any tests after to confirm * * * [he] didn't do any measurements as to what the front passenger is, what the front driver's is, what the windshield is." Tr. 46. The court reasoned that "[s]o as it stand[s] right now, I don't know that it's in violation." *Id.* However, this court has held that, in conducting a traffic stop, an officer is not required to prove the suspect committed an offense beyond a reasonable doubt or even satisfy the lesser standard of probable cause to believe that the defendant violated the law. *Westlake v. Kaplysh*, 118 Ohio App.3d 18, 20, 691 N.E.2d 1074 (8th Dist.1997).

{¶ 28} Thus, this court has held that even if a defendant's "two momentary flickers of his high-beam headlights spanning 14 seconds apart were not sufficient to constitute a violation of [the law]," the traffic stop at issue in that case was still lawful if the officer reasonably, albeit mistakenly, believed that a violation of the law had occurred. *State v. Spellacy*, 132 N.E.3d 1244, 2019-Ohio-785, ¶ 31 (8th Dist.), relying on *Heien v. North Carolina*, 574 U.S. 54, 135 S.Ct. 530, 190 L.Ed.2d 475 (2014). In *Spellacy*, this court found that "[b]ased on the totality of the circumstances," even if the officer was mistaken that the defendant violated the law, "or the evidence would be insufficient to prove the elements of [the relevant statute] beyond a reasonable doubt," the officer "had an objectively reasonable belief that a traffic violation occurred, thus constituting reasonable suspicion to justify the traffic stop." *Id.* at ¶ 35.

{¶ 29} Trooper Pangburn testified that McDonald's vehicle had "extremely dark window tint" and he "literally could not see anyone in the car." He further testified that he had been working road patrol for three years, had written numerous citations for window-tint violations, would often test the windows during those stops, and had never been wrong. That testimony provided reasonable suspicion for the stop.

{¶ 30} That Trooper Pangburn did not test the window after the fact does not invalidate what he believed at the time of the stop.

> "We note that this probable cause determination, like all probable cause determinations, is fact-dependent and will turn on what the officer knew *at the time he [or she] made the stop.* Under this test, it is clear that the courts may not determine whether there was probable cause by looking at events that occurred after the stop."

(Emphasis sic.) *Erickson*, 76 Ohio St.3d at 10, 665 N.E.2d 1091, quoting *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993).

{¶ 31} The record here demonstrates that Trooper Pangburn believed the tint on McDonald's vehicle was too dark and in violation of the law. The trial court acknowledged the trooper's belief. Whether the tint was actually a violation is a sufficiency issue, not a reasonable suspicion/probable cause for the stop issue. We further note that, contrary to the trial court's findings, Trooper Pangburn did testify as to the permissible amount of tint. He believed the front driver and passenger windows to be in violation of the law. He testified that those windows have to allow 50 percent of light in, and he believed they did not.

{¶ 32} In light of the above, the trial court erred in granting McDonald's motion to suppress. The state's sole assignment of error is sustained.

{¶ 33} Judgment reversed.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, J., CONCURS;
ANITA LASTER MAYS, A.J., DISSENTS (WITH SEPARATE OPINION)


ANITA LASTER MAYS, A.J., DISSENTING:

{¶ 34} I respectfully dissent and would affirm the trial court's decision to grant the motion to suppress.

{¶ 35} The facts of this case allow unfettered enforcement to officers before and after traffic stops. The state argues that the trial court improperly required the state to present evidence that would have been obtained *after the stop* in order to establish probable cause; that the trial court erred in suppressing the evidence where the officer had a good-faith belief that the dark tint on the appellee's window was in

violation of the law; and whether the exclusionary rule was properly applied by the trial court. I would determine that the trial court did not err.

{¶ 36} The trial court stated that it had an issue with the stop. (Tr. 44.) The court went on to state:

> Court: And the problem with the way I see the stop right now is that there's no comparison that's been provided to the Court. It looks like, when I see this picture, which I see it up here, I think it's marked Exhibit 2 on the stand, on the Mondoboard, I can see into the window from here. I don't know if anybody else can or not, but I can see in and I see that.

(Tr. 45.)

{¶ 37} "The Fourth Amendment protects against unreasonable searches and seizures. A traffic stop constitutes a seizure within the meaning of the Fourth Amendment." *State v. Slaughter*, 1st Dist. Hamilton Nos. C-170110, C-170111, and C-170112, 2018-Ohio-105, ¶ 10, citing *Whren v. United States*, 517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), quoting *State v. Brown*, 1st Dist. Hamilton No. C-190186, 2020-Ohio-896, ¶ 8. Therefore, one must comply with the reasonableness requirement of the Fourth Amendment. *Id.*

{¶ 38} Where an officer has probable cause to believe that a traffic violation has occurred the traffic stop can be reasonable. *Id* at ¶ 9. However, a trial court must examine the totality of the circumstances when determining whether during a traffic stop, an officer possessed probable cause or reasonable suspicion. *State v. Howell*, 2018-Ohio-591, 106 N.E.3d 337, ¶ 12 (1st Dist.). The circumstances of this stop begin with the trooper stating that he did not have the proper equipment to

measure the tint of the window. Although, the trooper stated that he had years of experience determining whether window tint was proper, the trial determined that the officer was not credible. The trial court stated that it has a problem, i.e., "I can see into the window from here." (Tr. 45.) The trial court is in the best position to determine witness credibility. This is because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). *State v. Bostock*, 4th Dist. Athens No. 11CA23, 2012-Ohio-3324, ¶ 13.

{¶ 39} As was stated in the majority opinion, if competent, credible evidence exists, a reviewing court defers to a trial court's findings of fact. *State v. Ward*, 4th Dist. Washington No. 10CA30, 2011-Ohio-1261, ¶ 10. A review of the record reveals that the trial court possessed competent, credible evidence while making its determination finding that the trooper did not have probable cause to stop the defendant.

{¶ 40} Thereafter, I would find assignments of error two and three moot. Furthermore, I cannot in good conscience allow this opinion to be published without the following comments. Pretextual stops must end. We must not allow law enforcement carte blanche authority to stop and then search drivers, just because. These unfettered actions lead to incidents such as what recently occurred in Memphis, Tennessee. It was disturbing to me to review the video evidence in this matter where the trooper informed the defendant that he had a failure to appear

warrant in Springfield, Ohio; told him that he had a duty to inform him; and was not going to arrest him, but stated that "I am going to search your car and that if everything is okay, I will let you go." Officers do not have authority to search vehicles for minor traffic violations. That would mean that during every stop sign or red light violation, there would be a search. And officers must stop saying that they smell marijuana when they do not. The evidence in this case showed the defendant smoking a "black and Mild" cigar. The officer acknowledged this yet still searched. More disturbing is that no marijuana was located in the vehicle (of course), and no citation was given for the window tint. This entire interaction is very disturbing, and because of this, I cannot and will not in good conscience concur with the majority's opinion because it would acquiesce to this bullying and bad behavior.