[Cite as *State v. Fleckinger*, 2024-Ohio-5659.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240253 |
| | | TRIAL NO. | B-2304839 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| JENNIFER FLECKINGER, | : | *O P I N I O N* | |
| Defendant-Appellant. | : | | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 4, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Schuh & Goldberg*, *LLP*, and Brian *T. Goldberg*, for Defendant-Appellant.

**WINKLER, Judge.**

**{¶1}** Defendant-appellant Jennifer Fleckinger appeals her conviction for possession of cocaine under R.C. 2925.11(A). In her sole assignment of error, she contends that the trial court erred in denying her motion to suppress evidence found in her car following a traffic stop. We find no merit in this assignment of error, and we affirm her conviction.

**{¶2}** The record shows that on September 28, 2023, Agent Andrew Cadell of the Hamilton County Sheriff's Office was assigned to the Regional Enforcement Narcotics Unit. On that afternoon, he was in a marked cruiser conducting "highway interdiction" along I-75 southbound when he saw a vehicle with extremely tinted front windows and windshield. The tint was heavy enough that he could not tell whether the driver of the vehicle was male or female.

**{¶3}** When Agent Cadell first noticed the vehicle, he was behind it, and he believed that the driver changed his or her behavior upon seeing his cruiser. He positioned his cruiser in front of the vehicle, but not in the same lane, and slowed down to let the vehicle pass him so that he could initiate a traffic stop. The vehicle would not pass him. Eventually, when he slowed down to less than 40 m.p.h. in a 65-m.p.h. zone, the vehicle passed him and he conducted the stop. He noticed that the vehicle's front windows were up while it was in motion, but after the stop, they were rolled down.

**{¶4}** Agent Cadell identified Fleckinger as the driver. He informed her that she was pulled over because "the window tint is extremely dark" and that she was driving at a slow speed. She told him that the vehicle belonged to a friend and that she had picked it up for him. When Agent Cadell asked her for her driver's license, she produced it and informed him that it was under suspension.

2

**{¶5}** Agent Cadell asked his partner to test the tint level. His partner reported back that it was 96 percent, which was consistent with Agent Cadell's observations, although he did not know which window his partner had tested. He then filled out a uniform traffic citation charging Fleckinger with excessive window tint under R.C. 4513.241. During the course of the stop, the officers found that Fleckinger possessed a small amount of cocaine.

**{¶6}** After the trial court denied her motion to suppress, Fleckinger entered a plea of no contest to one count of possession of cocaine. She was sentenced to one year of community control. This appeal followed.

**{¶7}** In her sole assignment of error, Fleckinger contends that the trial court erred in denying her motion to suppress. She argues that the police officers lacked probable cause to stop her vehicle. This assignment of error is not well taken.

**{¶8}** Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 2003-Ohio-5372, ¶ 8; *State v. Houston*, 2020-Ohio-5421, ¶ 56 (1st Dist.).

**{¶9}** An investigative stop is a seizure within the meaning of the Fourth Amendment that must be supported by objective justification. *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991); *Houston* at ¶ 57. The standard is not probable cause but reasonable suspicion. *Houston* at ¶ 57; *State v. Erkins*, 2012-Ohio-5372, ¶ 32 (1st Dist.). The police officers must point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Andrews* at 87, quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The standard is objective: would the facts available to the officers at the moment of the seizure have warranted

an individual of reasonable caution in the belief that the action taken was appropriate? *Andrews* at 87; *Houston* at ¶ 57.

**{¶10}** Specifically, in relation to automobiles, if there is a reasonable and articulable suspicion that an automobile or its occupants are subject to seizure for a violation of the law, stopping that automobile and detaining its occupants are reasonable under the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979); *Houston* at ¶ 58. A court determines the validity of an investigative stop by looking at the totality of the circumstances. *State v. Freeman*, 64 Ohio St.2d 291 (1980), paragraph one of the syllabus; *Houston* at ¶ 58.

**{¶11}** Reasonable suspicion is an elusive concept, and "[p]recisely defining reasonable suspicion is not possible." It is not readily reduced to a "neat set of legal rules." *State v. Hawkins*, 2019-Ohio-4210, ¶ 20, quoting *Ornelas v. United States*, 517 U.S. 690, 695-696 (1996); *State v. Fisher* 2024-Ohio-3164, ¶ 17 (1st Dist.). It is a less demanding standard than probable cause. *Hawkins* at ¶ 20; *Fisher* at ¶ 17. But it is something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Hawkins* at ¶ 20; *Fisher* at ¶ 17.

**{¶12}** Fleckinger acknowledges that window-tint violations may provide reasonable suspicion for a traffic stop. *See State v. McDonald*, 2023-Ohio-464, ¶ 26 (8th Dist.); *State v. Davenport*, 2017-Ohio-688, ¶ 18 (2d Dist.). She argues that the state failed to show that a window-tint violation occurred.

**{¶13}** When read together, R.C. 4513.241 and Adm.Code 4501-43-03 provide that tinted windows preventing a person from seeing into the vehicle are prohibited, subject to the standards in the Ohio Administrative Code. The administrative code then sets out the specific light transmittance standards for each window. *State v. Scott*, 2022-Ohio-3020, ¶ 18 (1st Dist.).

**{¶14}** The administrative code requires that "light transmittance be at least 70 percent (plus or minus three percent) for windshields and at least 50 percent (plus or minus three percent) for front side windows" *Id.* at ¶ 16. It defines "transmittance" as "the ratio of the amount of total light, expressed in percentages, which is allowed to pass through the product or material, including glazing, to the amount of total light falling on the product or the material and the glazing." *Id.* at ¶ 15, quoting Adm.Code 4501-41-02(C).

**{¶15}** Agent Cadell testified that when he first observed the vehicle, it had dark window tint on the windows, including the windshield. He described it as "extremely dark" to the point that he could not tell who the driver was or if the driver was male or female. That violation of R.C. 4513.241 gave him reasonable suspicion to stop the vehicle.

**{¶16}** Video footage recorded by Agent Cadell's dashboard camera and his and his partner's body cameras was admitted into evidence. Fleckinger argues that even though Cadell testified that the windshield and the driver's window were extremely dark, the video footage showed that he could see through the windshield from the back of the vehicle. While Agent Cadell acknowledged that he could see through the windshield from the back, he said it was "still too dark." He added that "it is a lot easier to see out of a tinted windshield than into a tinted window."

**{¶17}** Fleckinger further argues that Agent Cadell wrote on the citation that the tint was 96 percent because that was reported to him by his partner. But he did not check the windows himself, and he was not sure which window his partner had tested. The testing did not occur until after the stop had taken place. In reviewing the propriety of a stop, a court only looks at the facts the officer knew at the time of the stop. *Dayton v. Erickson*, 76 Ohio St.3d 3, 10 (1996); *McDonald*, 2023-Ohio-464, at

¶ 30 (8th Dist.).

**{¶18}** Fleckinger's arguments relate more to whether she was guilty of the charged offense. But the police are not required to "correctly predict that a conviction will result." *State v. Sims*, 2017-Ohio-8379, ¶ 24 (1st Dist.). Whether a driver could ultimately be found guilty of a window-tint violation is not determinative of whether police had reasonable suspicion to conduct a traffic stop. *State v. Daniels*, 2024-Ohio-3392, ¶ 11 (1st Dist.); *Sims* at ¶ 24.

**{¶19}** The trial court's findings that the window tint was "excessively dark," and that the police had reasonable suspicion to stop the vehicle were supported by competent, credible evidence. Consequently, the trial court did not err in denying Fleckinger's motion to suppress. We overrule Fleckinger's assignment of error, and affirm the trial court's judgment.

Judgment affirmed.

**BERGERON, P.J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.